John Larson, Plaintiff-Appellee, v. R. W. Borrowdale Company, a Corporation, Defendant-Appellant.

Gen. No. 49,295.

First District, Fourth Division.

October 7, 1964.

Rehearing denied November 18, 1964.

Francis X. Riley, of Chicago, for appellant.

Ward P. Fisher, of Chicago, for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

A judgment was entered in the Municipal Court of Chicago in favor of John Larson and against R. W. Borrowdale Company, in the sum of $4,500 and costs, on May 27, 1963. The defendant appeals from the judgment.

The judgment was based on the finding of the trial court that the plaintiff was entitled to commissions for the sale of two custom-built cameras to a third-party purchaser. Commissions were found to amount to $4,500.

The defendant here contends; 1) that there was no issue before the trial court inasmuch as the defendant filed no answer to plaintiff's amended statement

* See Callaghan's Illinois Digest, same topic and section number.

of claim;* 2) that the finding of the trial court was against the manifest weight of the evidence; and 3) that the defendant was denied a fair trial by the trial court since the trial court excessively cross-examined the defendant.

The plaintiff was 72 years old and had formerly managed Donnelley's Off-Set Rotogravure, and he still received $80 per month from them, plus social security. The defendant company is owned by Russell W. Borrowdale and custom-builds cameras and attachments. The defendant company built two large cameras to order for the Process Color Plate Company, owned by Grady Oakes, and it is on these sales that the plaintiff claims commission.

On or about January 5, 1960, the plaintiff had engaged a collection agency to act for him. The agency sent a letter to the defendant, demanding $942.88, which included interest. On February 26, 1960, suit was filed on behalf of the plaintiff against the defendant. The verified claim was based upon a sale of goods on or about June 1, 1959, for which plaintiff demanded the sum of $1,715.43 in commissions as a result of said sale. Attached to the statement of claim was a letter from the defendant to the plaintiff dated June 19, 1959, which stated:

"The Total Commission On The Camera Sold To, Process Color Plate Company at 1200 West Monroe Street, Chicago, Illinois will be $1,715.43. Paid on account $200.00.

Yours truly,
R. W. Borrowdale Company
/s/ R. W. Borrowdale
R. W. Borrowdale"

* At the time when the court entered the order permitting the filing of the amended statement of claim, nothing was said concerning the filing of an answer.

On April 18, 1960, the defendant filed a verified defense in which it denied that the plaintiff at any time sold any goods for or on behalf of the defendant, and it further states that the letter of June 19 was not written to acknowledge an indebtedness "but merely to advise plaintiff that if he, the plaintiff, were to buy a certain camera and resell it to a certain lithographer in connection with the then pending deal, the discount or commissions to plaintiff would be $1,715.43." The defendant says that the statement in the letter "paid on account $200.00" was his way of indicating that $200 had been advanced to the plaintiff which would be credited if plaintiff consummated the deal as the parties had contemplated.

It further states that prior to June 19, 1959, the defendant had at various times paid plaintiff the sum of $600 and that those payments were not payments against any commissions but "merely advances to plaintiff against future commissions which would accrue in the event that plaintiff sold any equipment on defendant's behalf."

The defense was verified. Both the attorney for the plaintiff and the defendant withdrew. New attorneys were substituted.

On June 20, 1961, the court entered an order permitting plaintiff to file the appearance of new counsel and to file an amended complaint, and on the same day the plaintiff filed an unverified amended complaint. (This complaint was verified by permission of the court during the trial.) In that complaint he alleged that on June 1 and on June 11, 1959, the plaintiff sold goods for defendant and that there became due to the plaintiff, as commissions, the sums of $3,187.10 and $3,506.90, or a total of $6,694. The letter of June 19 is incorporated by reference in the complaint. The complaint also states that the defendant

107

has paid to the plaintiff the sum of $800, leaving a balance of $5,900 due the plaintiff.

No answer was filed to this complaint. The case was tried before the court without a jury. The court found for the plaintiff and against the defendant in the sum of $4,500 and costs, and entered judgment accordingly.

On June 17, 1963, the defendant filed his notice of appeal. In the trial of the case Russell W. Borrowdale, owner of the defendant company, testified. After reading the record we are in full accord with the statement in plaintiff's brief that throughout the trial the testimony of the defendant "was self-contradictory, unresponsive, argumentative, antagonistic and unbelievable."

The first contention made by the defendant is that the trial court erred in going to trial before an answer had been filed, contending that without the filing of the answer there was no issue before the court.

■ ■ · Counsel for the defendant urges that the case was not at issue when it went to trial inasmuch as the defendant had not filed an answer to the amended complaint. Section 32 of the Practice Act (Ill Rev Stats 1963, c 110, § 32) provides that the first pleading by the defendant shall be designated an answer. Ordinarily an answer is required to be filed in order to bring the case to issue. However, there also is a rule that where the defendant goes to trial without filing an answer and introduces evidence to prove his affirmative defense without calling the attention of the trial court to the fact that no answer to the complaint had been filed by him, he waives his right to object to the failure of the defendant to file an answer.

In Pallasch v. United States Fidelity & Guar. Co., 329 Ill App 257, 67 NE2d 883, the defendant contended that because of the plaintiff's failure to file a

replication traversing new matter alleged in the defendant's answer, there was no issue before the court. In that case the court said:

". . . The evidence shows, however, that testimony was heard on the issues raised by the amended answer with reference to Pallasch's duties as manager of the Kruse service station. Since it appears that the parties regarded the issues as properly made, the filing of a traverse was waived. [Citing cases.]"

In Davis Milk Mach. Co. v. Tappen, 200 Ill App 464 (Abst), it was held that if the parties allow a suit to go to trial without the filing of a plea, or without formal issue or without formal pleadings, the error is cured by verdict. Also see Lindsey Haynes v. Multi-State Inter-Ins. Exchange, 40 Ill App2d 167, 189 NE 2d 369.

In the instant case, the defendant filed an answer to the first statement of claim. The plaintiff filed an amended statement of claim which in essence was the same as the first except that the damages were increased and an allegation was made that the plaintiff was entitled to commissions on the sale of the second camera. The defendant, in his defense to the first statement of claim, flatly denied that the plaintiff at any time had sold any goods or merchandise for or on behalf of the defendant, and denied any liability to the plaintiff. During the trial of the case there was a discussion to the effect that the second statement of claim was unverified. The court, without objection, permitted the statement of claim to be verified at that time. The defendant made no complaint that no answer had been filed to that statement of claim. The court could have considered that the defendant was standing on his answer to the first statement of claim.

Larson, on his own behalf, testified that he was for 50 years manager of Donnelley's Off-Set Rotogravure and that he also had demonstrated Direct-O-Plate equipment. He further testified that he met Borrowdale for the first time in 1958 or 1959. At that time Borrowdale offered him 20% commission if he went out and sold cameras for him, and also offered him a commission of 10% on the sale of accessories. Borrowdale took him out and introduced him to a few of his customers and gave him tips on how to sell. Borrowdale gave Larson business cards he had printed bearing the name of R. W. Borrowdale Company, with Larson's name in the lower left-hand corner, as "Factory Representative." Larson used these cards in making calls in the industry. He testified he was in Kansas City where there was an exhibit of Borrowdale's cameras and that he had a badge bearing his name (Borrowdale denied that he had given any cards or a badge to Larson and testified that he had told Larson at Kansas City to leave the Borrowdale booth).

The plaintiff also testified that certain torn papers which were introduced as exhibits with reference to the sale of the first camera, were a purchase order. The papers bore the signatures of Borrowdale and Oakes. Larson testified that the order was not in correct form and was torn up and thrown in the wastebasket, and that he retrieved the papers. Oakes and Borrowdale denied that the papers were a part of a purchase order, but neither could explain how their signatures appeared on the documents.

Larson also testified that he had talked to Oakes in connection with the purchase of the first camera and that he got the purchase order, previously referred to, from Oakes; that he brought Oakes to Borrowdale's plant with Oakes' plant superintendent, Johnson and that Oakes gave Larson a check for

$1,000 to the Borrowdale Company, which Larson gave to Borrowdale (both Borrowdale and Oakes denied that Oakes gave a check to Larson).

Larson testified that Borrowdale, when he told him that Oakes was to purchase a camera, told him they were very happy to get the order; that Borrowdale manufactured the camera and it was delivered to Oakes, and Oakes paid for it.

With reference to the purchase of the second camera, Larson testified that he had a conversation with Oakes in regard to that sale, giving him the quotation, and that Oakes then continued the transaction with Borrowdale. He stated that at that time there was some disagreement between Larson and Borrowdale.

Larson also testified that the original complaint was prepared by his then attorneys through a misunderstanding.*

Grady Oakes testified on behalf of the defendant. Mr. Oakes was president of Process Color Plate Company, which company had bought the cameras in question. He was a witness who was not friendly to the plaintiff. Among other things, he testified that Larson had told him about a camera manufactured by the Borrowdale Company; that on various other occasions Larson had tried to get Oakes to go to Borrowdale's place of business, and on this day he finally consented to go. Larson left Borrowdale and Oakes together and they arranged the details of the contract. Oakes also testified that either Larson had brought in the original estimate of price or it was

---

* Oakes testified that Johnson and he had looked at a couple of others before they bought the camera from Borrowdale and that Larson wanted to take Oakes and Johnson to Borrowdale's plant to show them the camera, which he told them had new features, and that Oakes and Johnson went to Borrowdale's plant with Larson.

111

mailed in. He testified that Johnson had also talked to Larson and that Larson talked to Johnson most of the time. Johnson had authority to, purchase camera equipment for the company, with the approval of Oakes. Johnson had told Oakes that Larson wanted them to go down to the Borrowdale plant. Oakes further testified that Larson wanted to take them (Oakes and Johnson) down and show them the cameras; that they accepted the invitation, and Larson drove them to the Borrowdale plant.* Oakes further testified that he had purchased the camera from the Borrowdale Company after having had the interview with Borrowdale.

Oakes also testified that he had met Borrowdale in 1958. A former employee of Oakes (Sompolski) testified that he saw Larson introduce Borrowdale to Oakes at the plant in 1959 and that as far as he knew it was the first time that Borrowdale and Oakes had met. Larson also testified.

We have already characterized the testimony of Borrowdale. Among other things, he testified first that he had signed the letter referring to commissions and then afterwards testified that he had not signed it. Borrowdale testified under examination by counsel and the court with reference to the letter. In that letter the statement was made that "Total commission on the camera sold to Process Color Plate Company . . . will be $1,715.43." Borrowdale said the letter did not refer to commissions but referred to some question of a suggested financing by Larson (all of which is contradicted by Larson).

> The court then said: "But in the letter you referred to it as a commission charge."

---

* It is interesting to note that Johnson was not called as a witness by the defendant.

The witness replied: "I can refer to it almost any way I want."

The court said: ". . . I am talking about the term commission."

The witness answered: "We can use any term," and added that when he was talking about an interest charge he referred to it as a commission.

This passage recalls a dialog in Lewis Carroll's "Through the Looking-Glass," between Alice and Humpty Dumpty.

Humpty Dumpty said, ". . . There's glory for you"!

"I don't know what you mean by 'glory,' " Alice said.

Humpty Dumpty smiled contemptuously. "Of course you don't—till I tell you. I meant 'there's a nice knock-down argument for you' "!

"But 'glory' doesn't mean 'a nice knock-down argument,' " Alice objected.

"When *I* use a word," Humpty Dumpty said, in rather a scornful tone, "it means just what I choose it to mean—neither more nor less."

"The question is," said Alice, "whether you *can* make words mean so many different things."

"The question is," said Humpty Dumpty, "which is to be master—that's all."

It would prolong this opinion and be idle to quote any more of Borrowdale's testimony. The testimony of Borrowdale could have been in its entirety properly disregarded by the court.

The defendant in this court complains that the trial court erred in that it denied the defendant a fair trial and became an advocate for the plaintiff, and argues that the court questioned both the plaintiff and the defendant during the course of the trial. We think there is nothing to this point. The court's questioning of the plaintiff did not indicate any partiality, and we think the court, in dealing with the defendant, exhibited extraordinary patience, considering the answers he received from the defendant.

██ The rule is that if the agent is the procuring cause of a transaction which he was authorized to negotiate, he will be entitled to his commission irrespective of the fact that the principal himself completes the final act of the negotiation. The fact that the agent was not personally present when the contract was signed, that it was consummated without his knowledge, or that he was released before final negotiations will not mean that the agent has not earned his commission.

In Sackett v. Centaur Motor Co., 189 Ill App 372, the court said:

"... Here it is immaterial whether the plaintiff did nor did not make the 'arrangement,' he was entitled to the commissions on the cars sold through defendant's office under arrangements effected while he was in defendant's employ."

In Heuvelman v. Triplett Electrical Instrument Co., 23 Ill App2d 231, 161 NE2d 875, it is said:

"... Thus, the general rule recognized in this and other jurisdictions is that an agent or salesman who is the procuring cause of a sale is entitled to commission notwithstanding the fact that the sale was consummated by the principal personally or through another agent. [Citing cases.] o o ."

114

In Wilson v. Mason, 158 Ill 304, at 310, 42 NE 134, it is said:

". . . If the principal accepts the purchaser thus presented, either upon the terms previously proposed or upon modified terms then agreed upon, and a valid contract is entered into between them, the commission is earned. . . ."

The court further states, at page 311:

". . . The true rule is, that the broker is entitled to his commissions, if the purchaser presented by him and the vendor, his employer, enter into a valid, binding and enforceable contract. . . ."

In Gould v. Ricard Boiler & Engine Co., 136 Ill App 322, the court at page 331 cites and quotes from the foregoing case. On the same page the court cites Hafner v. Herron, 165 Ill 242, 46 NE 211, in which case the court said:

". . . It is sufficient if the sale is effected through the efforts of the broker or through information derived from him (citing cases) . . . ."

The letter to the plaintiff, in which the defendant stated that the entire amount of commission on the first camera was $1,715.43, was attached to plaintiff's first statement of claim. During the trial of the case the court admitted the letter as evidence on behalf of the plaintiff.

In McCormick on Evidence, c 27, § 247 (1st Ed 1954), at page 531, it is stated:

". . . It is believed that the more acceptable view is that the failure to reply to a letter, containing statements which it would be natural under all the circumstances for the addressee to deny if he believed them untrue, is receivable as evidence of an admission by silence. . . ."

115

It is also said that this rule is particularly applicable where the proof shows that the parties are engaged together in some business or other relationship or transaction which would make it improbable that an untrue communication from one to the other about the transaction or relationship would be ignored. It is stated:

". . . The most common instance of this latter situation is the transmission by one party to such a business relationship to the other of a statement of account or bill rendered. A failure to question such a bill or statement is uniformly received as evidence of an admission of its correctness. . . ."

Also see Callaghan's Illinois Evidence, § 10.51; Greenberg v. S. D. Childs & Co., 242 Ill 110, 89 NE 679.

■ In any case, the plaintiff placed his seal of authenticity on the letter by offering it in evidence. That letter having been received in evidence could properly be treated by the trial court as an admission on the part of the plaintiff that he was entitled only to $1,715.43 as his commission on the sale of the first camera.

■ From a careful examination of the evidence, the holding of the trial court that the plaintiff was employed by the defendant to act as his agent to sell cameras and that he would receive a commission of 20 per cent of the sales price, was proved by a preponderance of the evidence. The trial court entered judgment in favor of the plaintiff for $4,500. The court does not indicate how it arrived at that figure.

It is immaterial what agreement was entered into between the parties originally with reference to the sale of the first camera. The letter in question sent by the plaintiff to Borrowdale stating that the total commission due on that camera was $1,715.43, which

letter was admitted in evidence on behalf of the plaintiff, is controlling on the finding of the court. The plaintiff thereby admits that the amount stated in the letter was to have been his commission on the sale of the first camera.

The selling price of the second camera about June 27, 1961, was $18,792.47. Certain accessories were also sold about the same time but we do not think the evidence is sufficient to justify a finding that the plaintiff was entitled to a commission on the sale of the accessories. The 20 per cent commission on the sales price would amount to $3,758.49. This added to $1,715.43, the total commission to which the plaintiff would be entitled would be $5,473.92. Subtracting from that $800 which was paid to the plaintiff would leave the amount of commission due the plaintiff $4,673.92.

The plaintiff has filed no cross-appeal nor does he in this court complain that the finding of the court and the judgment entered thereupon were not in accord with the evidence. Consequently, we will affirm the judgment of the trial court.

Affirmed.

ENGLISH, P. J. and DRUCKER, J., concur.