417 F.2d 1201
 GRAUBREMSE GMBH, a German corporation, Plaintiff-Appellee-Appellant,
v.
BERG MANUFACTURING & SALES Co., an Illinois corporation,
Defendant-Appellant-Appellee.
 Nos. 17357-17358.
 United States Court of Appeals Seventh Circuit.
 Nov. 5, 1969.
 
 Walter Treumann and Francis J. Higgins, Chicago, Ill., for Graubremse GMBH; Bell, Boyd, Lloyd, Haddad & Burns, Chicago, Ill., of counsel.
 Donald J. Kreger, Robert M. Karton, Chicago, Ill., for Berg Manufacturing and Sales Co.; Marovitz, Powell & Pizer, Kreger & Karton, Chicago, Ill., of counsel.
 Before CASTLE, Chief Judge, SWYGERT and CUMMINGS, Circuit Judges.
 CASTLE, Chief Judge.
 
 
 1
 Plaintiff, Graubremse GMBH, brought this action in the district court against defendant, Berg Manufacturing and Sales Corporation, for breach of contract and for an accounting for commissions allegedly owed to the plaintiff by defendant. Plaintiff is a West German corporation and defendant is an Illinois corporation. Both parties manufacture automobile parts, including brake chambers.
 
 
 2
 In the fall of 1963, Berg became interested in entering the European market. However, the differences between the European and American brake systems are so great that the two cannot be interchanged and one cannot be used for replacement purposes on a vehicle originally equipped with the other. Thus, in order to enter the European market, Berg had to establish its product with the original equipment manufacturers (OEM's) who would install Berg brake systems in new vehicles. Thereafter, an 'after market' would develop for Berg's products as replacements for worn brakes on the vehicles originally equipped with the Berg systems.
 
 
 3
 To help accomplish this goal, Berg, in June, 1964, contracted with the plaintiff to sell Berg brakes directly to plaintiff's exclusive distributor in the Netherlands, Metoal Companie Brabant (MCB).[1] The contract provided that plaintiff would be entitled to 20 percent of the sales price on all sales to OEM's. Accordingly, the price charged to MCB was the reduced OEM price, slightly above cost, plus 20 percent, the latter sum representing plaintiff's commission. If, however, the brake systems were sold in the after market, Berg's price to plaintiff would be the OEM price plus 30 percent, and plaintiff would have to increase that price by whatever profit margin it could.
 
 
 4
 In order to be entitled to the reduced OEM price, the contract required plaintiff to satisfy two conditions, besides having to sell Berg's products to OEM's: (1) the furnishing of purchase orders to defendant proving that the Berg products had been sold to OEM's; (2) plaintiff was to provide a letter of guarantee accepting full responsibility for open account shipping to MCB. Neither of these conditions was performed by the plaintiff.
 
 
 5
 Nevertheless, defendant began selling directly to MCB in July 1964, and collecting the OEM price plus the 20 percent earmarked for the plaintiff's commission. However, no commissions were paid to plaintiff and plaintiff did not demand the commissions allegedly due it until December 1964, some six months after sales to MCB began to be made by defendant. In January 1965, defendant responded to this demand by plaintiff by writing that the two conditions had not been satisfied.
 
 
 6
 In May 1965 defendant sent a letter to plaintiff which attempted to terminate the relationship between the parties and which stated that the defendant intended to establish its own sales operation in West Germany. However, defendant continued to sell directly to MCB and collect the entire price of OEM plus twenty percent. Moreover, two other 'affiliated' companies-- Berg Europa, a German corporation, and Berg UK, a British corporation-- also began selling directly to MCB after the attempted termination. Arthur Berg, president and owner (with his family) of substantially all the stock of the defendant, also owned substantially all the stock and was chief executive officer of the two foreign corporations. The sales of these companies to MCB lasted until some time in 1966 and amounted to $24,377. The sales of the domestic corporation (defendant) to MCB totaled $52,232.24.
 
 
 7
 The district court, after a trial, held that the plaintiff was entitled to the 20 percent commission on the sales made by defendant to MCB, but not on the sales made by Berg Europa and Berg UK to MCB. Both parties appeal from the judgment.
 
 
 8
 Defendant contends that plaintiff is entitled to no commission since, allegedly: (1) There was no evidence that defendant's products were placed on the original equipment market; (2) defendant did not waive performance of the two contractual conditions; and (3) the termination of the relationship between the parties was effective. We shall discuss these arguments in the order raised.
 
 
 9
 Proof of Resale to OEM's. The district court held that, contrary to defendant's contention, 'the likelihood that resale was to OEM's * * * is great because only a small replacement market then existed in Holland. * * * Without an after market the only customers available to purchase the brake chambers were OEM's.' In reaching this conclusion, the court quoted the following portion of Mr. Berg's deposition:
 
 
 10
 'Q. * * * Were you interested in the after market?
 
 
 11
 'A. No. There is no after market.
 
 
 12
 'Q. Why is that?
 
 
 13
 'A. * * * Therefore, there
 
 
 14
 'A. * * * Therefore, there could not be, unless there were OEM usage first, manufacturers using it first, there could be no after market for it * * *
 
 
 15
 'Q. * * * In effect there could be no after market until after a substantial period of time.
 
 
 16
 'A. That's right, that basically if you are talking after market, there was just nothing to talk about.'
 
 
 17
 Defendant, on appeal, cites other testimony and documents as tending to contradict this statement by Mr. Berg, and attempts to draw a different conclusion from the above-quoted testimony. Plaintiff also analyzes other evidence and draws conclusions therefrom favoring its position. The result is that the parties have demonstrated evidence on both sides of the issue, the conflict of which was resolved by the district court in plaintiff's favor.
 
 
 18
 Rule 52(a), Federal Rules of Civil Procedure, provides that 'Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.' The Supreme Court, in commenting on the above language, stated: 'The rule requires that an appellate court make allowance for the advantages possessed by the trial court in appraising the significance of conflicting testimony and reverse only 'clearly erroneous' findings.' Graver Tank & Manufacturing Company v. Linde Company, 336 U.S. 271, 275, 69 S.Ct. 535, 537-538, 93 L.Ed. 672 (1949). Similarly, this Court in Harry Alter Company v. Chrysler Corporation, 285 F.2d 903, 906 (7th Cir. 1961), stated: 'The resolution of * * * evidentiary conflicts is the precise function for which our trial courts sit. It is only necessary for us to determine on review whether the findings supporting the judgment have an evidentiary basis.'
 
 
 19
 We are of the opinion that, in the instant case, such an evidentiary basis is present which supports the finding that no after market for defendant's products existed during the relevant period. This conclusion is consistent with the conduct of the defendant in lowering its OEM price to a point just above cost. Such a price inducement was needed to persuade original equipment manufacturers to install defendant's American-type brake systems on their new vehicles. Only with the passage of time would the more lucrative after market for replacement parts develop. At the time of the sales to MCB, however, in Mr. Berg's own words, 'if you are talking after market there was just nothing to talk about.'
 
 
 20
 The district court noted two other indications that no after market existed: (1) the defendant's confidence that MCB was selling to OEM's as manifested by its appropriation of and contract with plaintiff's customer, MCB, in violation of the latter's exclusive distributorship agreement with the plaintiff; (2) evidence that MCB informed Mr. Berg that all sales were 'strictly' to OEM's. This latter evidence was contained in Mr. Berg's deposition testimony introduced by plaintiff, which, the district court held, defeated defendant's claim that the plaintiff should have called MCB to testify.[2] In view of this record we cannot say that the district court's findings were 'clearly erroneous.' Accordingly, we reject defendant's contention on this point.
 
 
 21
 Waiver. The district court held that although plaintiff never furnished the purchase orders or sent a letter of guarantee, defendant waived these two conditions by continuing to sell to MCB and collecting the full price after it had been informed that neither MCB nor the plaintiff could furnish the purchase orders and after receiving no credit guaranty from the plaintiff.[3] The reason given for not being able to provide defendant with purchase orders was that the original equipment manufacturers, to whom the defendant's products were sold, objected to having that type of information passed out. Having received this information at the beginning of its sales to MCB, defendant made no further requests for the purchase orders. The obvious explanation, advanced by plaintiff and concurred in by the district court, for defendant's failure to demand that the purchase order requirement be complied with, was that, as previously discussed, defendant knew no after market existed and needed no further proof of that fact.[4]
 
 
 22
 In Stewart v. Meyers, 353 F.2d 691, 694 (7th Cir. 1965), this court stated the well-known rule regarding waiver of contractual requirements:
 
 
 23
 'A party to a contract may by express agreement or by his own course of conduct waive his legal right to insist on strict performance of the covenants of the contract. Chicago Sugar Co. v. American Sugar Refining Co., 7 Cir., 176 F.2d 1, 7; Baxter v. Metropolitan Life Ins. Co., 318 Ill. 369, 371-372, 149 N.E. 243; Aetna Life Ins. Co. v. Sanford, 200 Ill. 126, 130, 65 N.E. 661; 55 Am.Jur., Vendor & Purchaser, Sec. 287. Although the question as to what facts are sufficient to constitute a waiver is a question of law, the question whether such facts exist in any given case is a question of fact for the jury. Chicago Sugar Co. v. American Sugar Refining Co., supra; Baxter v. Metropolitan Life Ins. Co., supra.'
 
 
 24
 Since the instant case was tried to the court without a jury, it was the function of the district court to decide whether sufficient facts were shown to constitute a waiver. As to the question of law-- whether the facts proven were of a sufficient character to constitute a waiver-- a review of the record convinces us of the correctness of the district court's decision.
 
 
 25
 The plaintiff had performed its main contractual duty by tendering MCB, which was otherwise bound by the exclusive distributorship agreement with plaintiff, to defendant for use by the latter as a distributor of defendant's products. By accepting the benefits of this performance and by continuing to collect the full purchase price, (OEM plus 20%), defendant waived the requirement that plaintiff furnish the purchase order. Such conduct by defendant was inconsistent with any claim of continued reliance on the contractual requirement of providing purchase orders as proof that MCB was selling defendant's products to OEM's. Had defendant actually desired or needed such proof, its proper course of action would have been to halt sales to MCB until sufficient proof was furnished. To continue the sales manifested defendant's intention to waive the requirement, regardless of any pretextual statements to the contrary. In Peterson Steels v. Seidmon, 188 F.2d 193, 195 (7th Cir. 1951), this court stated:
 
 
 26
 'When a vendor refuses or is unable to perform in accordance with the provisions of a contract, the vendee may, in spite of the default, treat the agreement as in full force and effect. Kentucky Natural Gas Corp. v. Indiana Gas & Chemical Corp., 7 Cir., 129 F.2d 17, 19, 143 A.L.R. 484; Roehm v. Horst, 178 U.S. 1, 11, 20 S.Ct. 780, 44 L.Ed. 953. If the party not in default induces the other party to continue its performance or to otherwise alter its position in reliance on continued recognition of the existence of the contract, he is not permitted later to alter his position and claim that his obligations under the contract have been discharged. Kentucky Natural Gas Corp. v. Indiana Gas & Chemical Corp., supra; Hills v. McMunn, 232 Ill. 488, 83 N.E. 963.'
 
 
 27
 Accordingly, we reject defendant's contention on the issue of waiver.
 
 
 28
 The Attempted Termination. The district court found that defendant's attempted termination of its relationship with plaintiff was ineffective. The court held:
 
 
 29
 'Once Graubremse tendered its customer to Berg * * * plaintiff fulfilled its contractual obligations; it secured sales to OEM's for defendant. Berg cannot then escape its liability to pay commissions by circumventing the plaintiff. See, e.g., Larson v. R. W. Borrowdale Co., 53 Ill.App.2d 104, 114, 203 N.E.2d 77 (1st Dist. 1964). Compare Strang v. Witkowski, 138 Conn. 94, 82 A.2d 624 (1951); Heuvelman v. Triplett Electrical Instrument Co., 23 Ill.App.2d 231, 237, 161 N.E.2d 875 (1st Dist. 1959).'
 
 
 30
 We agree. Despite the May, 1964 letter, the contractual relationship was not in fact terminated since Berg continued to sell to MCB. It was this very right to sell to plaintiff's exclusive distributor which defendant had contracted to receive in exchange for the 20 percent commission payable to plaintiff by defendant. In short, having received that benefit for which it agreed to pay, and having availed itself of the continued benefits of plaintiff's performance, defendant could not then claim that it terminated the agreement. The simple fact was that defendant's actions compelled the opposite conclusion of its words, and plaintiff was entitled to rely on those actions. Accordingly, the authorities cited by defendant regarding agencies terminable at will are inapposite to the facts presented here. Rather, the instant case is analogous to those cases which hold that an agent who is the procuring cause of a transaction which he was authorized to negotiate is entitled to the commission for the transaction, regardless of the fact that he was discharged prior to the completion of the deal. See Larson v. R.W. Borrowdale Co., 53 Ill.App.2d 104, 114, 203 N.E.2d 77 (1st Dist. 1964); Heuvelman v. Triplett Electrical Instrument Co., 23 Ill.App.2d 231, 237, 161 N.E.2d 875 (1st Dist. 1959); Sackett v. Centaur Motor Company, 189 Ill.App. 372, 375 (1st Dist. 1914). We affirm the district court's holding that the termination letter was ineffective.
 
 
 31
 Sales to MCB by the Two Foreign Companies. There remains the issue of whether or not plaintiff is entitled to recover commissions for sales to MCB by Berg Europa and Berg UK. The district court found:
 
 
 32
 'Although the president of Berg Manufacturing and Sales Company owns substantially all of the stock of these companies, a judgment cannot be entered against them since they are not parties defendants. Moreover, they are not affiliated with the only defendant in the case, Berg Manufacturing and Sales Company.'
 
 
 33
 We agree that no judgment can properly be entered against Berg Europa and Berg UK. But that fact does not preclude liability of the defendant for commissions on the sales made by them. The defendant, being liable for the commissions on its sales to MCB, cannot escape liability by using corporate agents or subterfuges for such sales. Thus, regardless of whether or not the two foreign corporations were labeled 'affiliates' or 'subsidiaries' of the defendant, if they were in fact acting on behalf of defendant in making their sales to MCB, the defendant would be liable for the commission on those sales. In such a case the two foreign corporations need not be named as parties defendants to the action.
 
 
 34
 On appeal, plaintiff points to evidence which, it claims, establishes proof of an agency relationship or other subterfuge used by defendant. Since the court below did not make any findings of fact in this regard, it is necessary that we remand the case to the district court to determine whether or not the defendant utilized Berg Europa and Berg UK, as agents or otherwise, to make sales to MCB in violation of defendant's contract with the plaintiff, and to enter judgment accordingly.
 
 
 35
 Therefore, we affirm the judgment of the district court insofar as it awarded the commissions to plaintiff on sales made by defendant to MCB, and reverse the holding denying the additional commissions claimed on the sales made by Berg Europa and Berg UK to MCB, and remand the cause for further proceedings as above indicated.
 
 
 36
 Costs on appeal are awarded to plaintiff, Graubremse GMBH.
 
 
 37
 Affirmed in part, reversed in part, and remanded with directions.
 
 
 
 [1]
 Under MCB's exclusive distributorship contract with the plaintiff, MCB was precluded from dealing with anyone other than plaintiff without the latter's consent
 
 
 [2]
 The court below also noted that 'having appropriated plaintiff's chief witness (MCB), defendant cannot now complain that Graubremse did not call MCB to testify.'
 
 
 [3]
 Defendant, on appeal, does not contest the district court's holding that it waived the second requirement
 
 
 [4]
 The district court, in a footnote, stated: 'Since there was only a limited after market, thus reducing the likelihood of non-OEM sales, Berg's willingness to waive the receipt of the purchase orders seems natural.'