STEVEN ROSEN, Plaintiff-Appellee, *v.* DePORTER-BUTTERWORTH TOURS, INC., Defendant-Appellant.

Third District   No. 77-360

Opinion filed August 7, 1978.

STOUDER, J., dissenting.

Joseph R. Rosborough, of Moline, for appellant.

Katz, McAndrews, Durkee & Telleen, of Rock Island (Martin Katz, of counsel), for appellee.

Mr. PRESIDING JUSTICE BARRY delivered the opinion of the court:

The plaintiff, Steven Rosen, brought this suit to recover $1,136 which he paid to the defendant, DePorter-Butterworth Tours, Inc., for arranging an itinerary and supplying a tour for an overland African safari. The plaintiff alleged that the defendant had breached the agreement to arrange the

tour and as a result plaintiff was not able to go on the tour. After a bench trial on the merits, the trial court entered judgment for the plaintiff and against the defendant in the sum of $1,136 plus costs of suit. The defendant appeals from that judgment.

On August 27, 1975, the plaintiff took a brochure advertising an overland African safari, beginning in Cairo and followed by six weeks of an overland tour throughout Africa, to the defendant, DePorter-Butterworth Tours, Inc. The brochure had the name of World Trek on it. Plaintiff testified that he had acquired the brochure from a friend. The plaintiff asked Mrs. Andrews, an employee of the defendant, about such an African trip and was told that it could be arranged. He left a $100 deposit with the defendant that day and on the following day he returned and paid the defendant $1,036, the balance due on the trip. The defendant contemplated a commission on the transaction and forwarded to World Trek a letter indicating the commission for booking the tour of $113.60 and sending a DePorter-Butterworth check for only $1,022.40 for the remainder of the tour price. Plaintiff informed defendant that he was leaving the area 2½ months ahead of the time for his African safari and would be traveling on an unscheduled casual basis from London and on through Europe. Mrs. Andrews, for DePorter-Butterworth Tours, Inc., advised the plaintiff of all the documents and innoculations he would need and was told to contact Kimbala Tours on his arrival in London for additional information. The plaintiff also was told that he would be met in Cairo and transferred to the Fontana Hotel where the rest of the group would be gathering for the safari. Plaintiff distinctly advised the defendant that he could be contacted in Athens through the American Express office at any time prior to his departure for Cairo to begin the tour. The evidence also revealed that the defendant had arranged a passage to a hotel in Rome for plaintiff's father so that he could visit with plaintiff prior to plaintiff's departure for Cairo to begin the safari. Plaintiff's father had been a client of the defendant for many years. Defendant admitted the ability to contact the plaintiff and plaintiff testified that he checked the Athens American Express office for messages but received none from the defendant.

The plaintiff arrived in Cairo on December 4, the date set for the safari. He arrived at the Fontana Hotel pursuant to his instructions, but was informed that the hotel management had never heard of his tour. He contacted the Sphinx Travel Agency in Cairo but learned nothing more of his tour. Due to conditions in Egypt, plaintiff testified it was impossible to make a phone call outside the country. After remaining in Cairo one week and still finding no safari tour assembling he flew back to Athens and from there he called Kimbala Tours in London. He was advised by Kimbala that the itinerary of the tour had been changed to eliminate Cairo and that

Kimbala Tours had not been able to contact the plaintiff to tell him to meet the tour group in Nairobi instead. It appeared from the evidence that the defendant had not communicated plaintiff's contact address in Athens to World Trek or Kimbala Tours.

On appeal defendant raises several issues: (1) whether the Uniform Commercial Code is applicable to this transaction; (2) whether the trial court erred in failing to grant judgment upon defendant's affirmative defense; (3) whether the trial court erred in failing to grant judgment upon defendant's counterclaim; and (4) whether the trial court erred in finding the defendant liable to the plaintiff for the price of the tour.

■■ That the Uniform Commercial Code (Ill. Rev. Stat. 1975, ch. 26, par. 2—105 *et al.*) applies to this transaction, or more specifically, defendant argues, that the plaintiff merely purchased tickets for the trip from the defendant and that tickets fall within the definition of things for purposes of the Sales Article of the Uniform Commercial Code, is the first issue raised. The defendant cites several cases in support of his claim that tickets fall generally within the category of things, all of which we believe are distinguishable. In *United States v. Rhea* (W.D.Ark. 1961), 199 F. Supp. 301, and *Turner v. State* (Tex. Crim. App. 1963), 372 S.W.2d 346, the courts of review dealt with criminal charges and defined a credit card and a railroad ticket, respectively, as coming within the definition of things in a criminal statute prohibiting stealing. Neither case involved sales under article 2 of the Uniform Commercial Code. In *Monroe County Savings Bank & Trust Co. v. Klohr* (1928), 249 Ill. App. 576, and *Tumy v. Mayer* (1919), 289 Ill. 458, 124 N.E. 661, the courts were involved with construing the difference between "things" and "things in action." Neither case decided that tickets or a vacation tour was within the definition of goods so that the Uniform Commercial Code was applicable. Contrary to defendant's arguments we believe that the plaintiff purchased a trip and contracted for defendant's services as a travel agent and did not purchase tickets, goods, or "things." The Uniform Commercial Code is not applicable to these facts and circumstances.

Defendant's second claim of error is that the trial court erred in not entering judgment on defendant's affirmative defense as alleged in his answer. The case of *Cunningham v. City of Sullivan* (3d Dist. 1958), 15 Ill. App. 2d 561, 147 N.E.2d 200, defines an affirmative defense as one that gives color to the opposing party's claim and then asserts new matter by which the apparent right is defeated. In defendant's answer the only thing that is arguably an affirmative defense is the allegation that plaintiff failed to notify the tour sponsor, World Trek, of his whereabouts so that he could be notified of any changes in the travel plans of the tour. Although the allegation relates to new matter it ignores the existence of an agency

relationship and therefore does not amount to a bar to plaintiff's claimed right of recovery.

■■■ In a related argument defendant contends that the plaintiff failed to respond to the matters alleged as an affirmative defense or counterclaim and that plaintiff thereby admitted them. Defendant's alleged affirmative defense amount to only a general denial of plaintiff's basis of recovery and no answer by plaintiff was needed. The record reflects that defendant went to trial on all issues including the alleged affirmative defense and counterclaim and failed to further object or move for a judgment based upon plaintiff's admission by failing to respond to them. The case of *Larson v. R. W. Borrowdale Co.* (1st Dist. 1964), 53 Ill. App. 2d 104, 203 N.E.2d 77, applies by analogy and defendant waived his right to object to plaintiff's failure to respond to his counterclaim by his proceeding to a trial on the merits without objection. The record also reflects that the trial court in its judgment order specifically found against the defendant on his counterclaim after hearing all the evidence despite the plaintiff's failure to specifically answer and deny the counterclaim.

■■ The final issue presented for review is whether the trial court erred in finding defendant liable to the plaintiff for the price of the tour. Inherent in a decision of this issue is a determination of the relationship between plaintiff and defendant and defendant and the tour sponsor, World Trek. The facts in the case of *Simpson v. Compagnie Nationale Air France* (1969), 42 Ill. 2d 496, 248 N.E.2d 117, are analogous to the instant appeal and we believe, therefore, that the same special agency relationship between a traveler and his travel bureau exists in this case. The conclusion reached by the supreme court in *Simpson* was that in the normal situation between a travel bureau and its traveler client a special agency relationship arises for the limited object of the one business transaction between the two parties. It is clear in the present case that the plaintiff employed the defendant travel bureau as his special agent for the limited purpose of arranging the African Safari Tour sponsored by World Trek.

Although the sponsor of the tour, World Trek, as advertised in the brochure, was not a party to this lawsuit, their relationship to the defendant is an important factor in deciding liability. The record contains a letter from defendant to World Trek as plaintiff's exhibit no. 4, which admits to defendant's selling of World Trek's tour to the plaintiff and hints of a principal-agency relationship between World Trek and the defendant. The evidence also disclosed that the defendant received a 10% commission from World Trek for selling its tour. The legal principal that an agent is liable as a principal to a third party in the case of an undisclosed agency relationship is well established and needs no citation for authority. In the instant case the plaintiff was aware that World Trek was sponsoring the tour but was without knowledge as to whether the

defendant was truly representing him as his special agent for arranging the tour or whether defendant was acting as an agent for World Trek in selling its tour to plaintiff.

The traditional relationship between a travel bureau, such as defendant, and the tour sponsors of the various tours sold has been categorized as one of agent and principal particularly in the field of tort liability of the travel bureau for injuries that occur to the traveler, as clearly set out in cases cited under Annot., 53 A.L.R. 3d 1310 (1973). No sound reason exists for not finding the same principal-agent relationship between a tour sponsor and a travel bureau in the case of alleged liability for breach of an agreement involving the ultimate sale of the tour to an ordinary member of the traveling public, such as the plaintiff.

Under circumstances similar to the case at bar involving a breach of contract by a travel bureau to its customer several out-of-state courts have readily recognized a principal-agent relationship between the tour sponsors and the travel bureaus, and accordingly found liability for the breach in favor of the traveler. (See *Unger v. Travel Arrangements, Inc.* (1966), 25 App. Div. 2d 40, 266 N.Y.S. 2d 715, and *McQuade Travel Agency, Inc. v. Domeck* (Fla. App. 1966), 190 So. 2d 3.) As we have heretofore indicated, if an agent does not disclose the existence of an agency relationship and the identity of his principal, he binds himself to the third party with whom he acts as if he, himself, were the principal. (*Vander Wagen Bros., Inc. v. Barnes* (1973), 15 Ill. App. 3d 550, 304 N.E.2d 663.) In a case similar to the instant one it was held that it was not sufficient for an agent to escape liability that the third party had knowledge of facts and circumstances which would, if followed by reasonable inquiry, disclose the identity of the principal. (*Mawer-Gulden-Annis, Inc. v. Brazilian & Columbian Coffee Co.* (1964), 49 Ill.App. 2d 400, 199 N.E.2d 222.) The fact that the plaintiff knew that World Trek and not defendant was the tour sponsor does not satisfy the necessary disclosure to prevent defendant from becoming liable as principal. The instant situation becomes particularly sensitive for the defendant with the strong possibility that he is acting in a dual agency capacity with inherent conflicting interests.

Under the authority of *Simpson v. Compagnie Nationale Air France* (1969), 42 Ill. 2d 496, 248 N.E.2d 117, it is also clear that the defendant is the special agent of the plaintiff. The record supports a conclusion that the plaintiff acted with due care and informed the defendant of his whereabouts for purposes of any contacts to prevent the unfortunate happening which actually occurred. On the other hand the defendant negligently failed to inform World Trek of plaintiff's whereabouts so that messages of changes in the tour could be communicated to him, and the defendant also failed to inquire of World Trek of any changes in the tour

which would affect its customer, the plaintiff. In that aspect we believe defendant acted negligently in violation of his duties under his agency agreement with the plaintiff to arrange this particular tour. The defendant failed to exercise the degree of care required of it as the agent of plaintiff and is therefore liable for the damage that resulted. (*Thorp v. Gosselin Hotel Co.* (1965), 65 Ill. App. 2d 107, 212 N.E.2d 1.) The trial court, as the trier of fact, agreed with this conclusion, and we believe the trial court's findings are here manifestly supported by the evidence contained in the record.

Because of defendant's inherent conflict of interest in acting for both plaintiff and World Trek, we cannot give any weight to the defendant's contention that it was only the fault of World Trek that plaintiff was not notified of the change in the tour which resulted in plaintiff missing the tour.

For the reasons stated the judgment of the Circuit Court of Rock Island County is affirmed.

Affirmed.

ALLOY, J., concurs.

Mr. JUSTICE STOUDER, dissenting:

I respectfully dissent from the opinion of my colleagues. I cannot agree that defendant was an undisclosed agent for the tour sponsor, World Trek. Furthermore, an examination of the pleadings reveals that plaintiff did not seek recovery from defendant based upon a purported violation of defendant's duties as a special agent of plaintiff and hence any reliance by the majority on such a theory is misplaced. *Simpson v. Compagnie Nationale Air France*, 42 Ill. 2d 496, 248 N.E.2d 117, appears to be the primary if not sole Illinois authority to consider principal-agent relationships involving travel agencies. As such, a careful examination of that decision is warranted.

In *Simpson* the plaintiff paid the Elizabeth H. Larkin Travel Service, Inc., a sum of money to purchase air fare on "Air France" and for certain other travel arrangements. No ticket was ever issued and Air France never received any of the funds plaintiff paid to Larkin. Due to poor health, it became apparent that plaintiff would be unable to embark on his European trip and he requested a refund from Larkin in advance of his scheduled departure. Shortly thereafter Larkin filed a voluntary petition in bankruptcy. After filing a claim in bankruptcy court, plaintiff commenced an action in the circuit court of Cook County against Air France to recover the fare for a contemplated return flight from Rome to Paris and then to Chicago. On appeal, plaintiff argued that Larkin was the

agent of Air France and that Air France should be liable for the acts or defalcations of its agent. Air France claimed that Larkin was a broker or special agent for plaintiff rather than an agent of the airline. It was conceded that Larkin was an agent, but the issue was for whom? In discussing this issue, the court stated at 42 Ill. 2d 496, 498, 248 N.E.2d 117, 119:

> "In our search for the principal we consider both the form and substance of the transaction in issue.
>
> The characteristics differentiating between a 'broker' and an 'agent' are clearly set out in *City of Chicago v. Barnett*, 404 Ill. 136, 142. The court there said: 'A broker is distinguished from an agent in that a broker sustains no fixed and permanent employment by, or relation to, any principal, but holds himself out for employment by the public generally, his employment in each instance being that of a special agent for a single object, (citation) whereas an agent sustains a fixed and permanent relation to the principal he represents and owes a permanent and continued allegiance."

After evaluating and applying the various factors which determine the existence or nonexistence of an agency relationship, the supreme court held that Larkin was acting only in the capacity of a broker and that plaintiff was Larkin's principal. In conclusion, the supreme court quoted from Mechem's treatise on agency (Mechem, A Treatise On the Law of Agency 44 (2d ed. 1914):

> " 'He [the broker] is primarily the agent of the person who first employs him, and he cannot, without the full and free consent of both, be, throughout the transaction, the agent of both parties. Without such consent, he can only act as the agent of the other party when the terms of the contract are fully agreed upon between the principals.' " (42 Ill. 2d 496, 500, 248 N.E.2d 117, 120.)

While I would agree with my colleagues that DePorter-Butterworth was a broker and hence the special agent for the plaintiff, the record does not support the conclusion that defendant was also the agent of World Trek. While the fact that defendant received its compensation in the form of a 10% commission from World Trek favors a conclusion that defendant was an agent of World Trek, such a fact alone is not controlling. (See *Simpson v. Compagnie Nationale Air France*, 42 Ill. 2d 496, 248 N.E.2d 117.) In *Simpson*, the supreme court noted that the receipt of a commission or fee by the travel bureau from the air carrier was one aspect of an agency relationship between the two. Nevertheless, the court found that the travel bureau was only the broker or special agent of the traveler and not the agent of the air carrier. Here, apart from the evidence of the 10% commission, the only other evidence relied upon by the majority to

support the existence of an agency relationship between defendant and World Trek is a letter from defendant to Darius Transky of World Trek dated December 9. The letter generally relates first what happened to plaintiff when he tried to meet the tour in Cairo. The letter continues:

> "We have never heard of such a thing. The least you could have done was contact me and I could have given them the message since it was through me he had booked this tour. Or at least had a message for him, or anyone else who was not informed of the change in plans where to meet your tour director.
>
> Mr. Rosen is holding us liable for your actions and we in turn are holding you responsible for the inconvenience caused to our client. We request you send a full refund to us at once. We are not in the habit of selling a tour and have a person show up, after great expense, and find the itenerary changed and no one to inform him of that change. Please forward your check to me by return mail."

While this letter may "hint" of an agency relationship between defendant and World Trek as is suggested by the majority, the letter as a whole conveys the impression that defendant was and considered itself to be solely the agent of the plaintiff. The majority chooses to ignore other more substantial facts belying any agency relationship between defendant and World Trek.

Prior to the time that plaintiff brought a World Trek brochure to defendant, defendant had no contact with World Trek. Plaintiff did not obtain the brochure from the defendant, but acquired it from a friend. Defendant never solicited or promoted the World Trek tour, but on the contrary, defendant's actions in arranging the World Trek tour for plaintiff were undertaken solely upon plaintiff's request. Apart from this isolated transaction, it does not appear that defendant had any other contact with World Trek and certainly had no permanent association with it. In light of the foregoing, I believe that as a matter of law, defendant was not the agent of World Trek, but was only the broker or special agent for plaintiff.

In holding defendant an undisclosed agent of World Trek, the majority refers to an annotation in Annot., 53 A.L.R.3d 1310 (1973). Without examining in detail each of the cases in the annotation, suffice it to state they generally involve a relationship between a travel agent and tour sponsor which could be best categorized as a joint venture where each party was the agent of the other, a situation distinct from the present facts.

The *Unger* and *McQuade* decisions cited by the majority both arose from a traveler first booking a cruise on the S.S. Rivieria, owned and operated by the Caribbean Cruise Lines, Inc., and the traveler then being denied passage when the owner of the vessel became insolvent and

canceled the cruise. *Unger* involved an appeal from a summary judgment against the defendant travel bureau. The appellate court held that if the plaintiff knew that Caribbean Cruise Lines, Inc., operated the S.S. Rivieria then he could not recover from the defendant on the ground of an undisclosed principal. The opinion in *McQuade* assumed that defendant was the agent for the cruise line without discussing the applicable principles of agency and the sole issue decided was whether the defendant sufficiently disclosed the identity of its principal by merely revealing the name of the cruise ship. Without any revelation as to why or how the defendant was the agent of the steamship company, McQuade offers little support to the majority's decision. Furthermore, the reasoning and results reached in *Unger* and *McQuade* are inconsistent with the extensive reasoning of our own supreme court in *Simpson v. Compagnie Nationale Air France*, 42 Ill. 2d 496, 248 N.E.2d 117.

Apart from any undisclosed agency theory, in upholding the defendant's liability the majority also rely upon an alleged breach by defendant of its duties as an agent to its principal, Rosen. While the defendant's failure to notify World Trek in advance of Rosen's European itinerary or inquiring of World Trek of any changes in the tour may be a breach of its duties as an agent, plaintiff's complaint does not even remotely suggest such a theory of recovery. I do not consider it appropriate for this court to uphold defendant's liability based upon a theory of recovery which was not advanced or even suggested in the plaintiff's complaint. We are not involved here with an area of law which has been extensively reported and therefore the defendant's duties as a special agent in this particular factual setting are not well defined. Without the appropriate allegations in the complaint and the argument in the trial court which necessarily follows, it is difficult if not impossible to accurately assess the nature and extent of defendant's duties to plaintiff and whether those duties have been violated.

As stated previously, I believe the facts do not support liability of defendant based upon principles of an undisclosed agency relationship. In light of the failure of plaintiff to properly plead for recovery based upon defendant's negligence in discharging its duties as a special agent, I believe the judgment should be reversed.