Francis J. Donovan, J.
This small claim proceeding involves a matter of increasing importance to the' traveling public, namely, the responsibility of a travel agency in connection with the sale of a tour.
Claimant engaged the defendant travel agency to make reservations for a three-day trip for herself and her husband to Las Vegas. The agency advised the claimant that they would stay at the Aladdin Hotel. Changes were made in the arrival and departure time of their flight from that originally stated. At the airport tags on the plaintiff’s baggage were switched so that the baggage was not directed to the Aladdin Hotel. On arrival in Las Vegas the claimant learned that no reservations had been made for herself or her husband at the Aladdin Hotel. They were required to take alternate accommodations at a motel. The motel was a half mile out of town. This created additional expense and inconvenience for the claimant and her husband in traveling to the places of interest in the town.
The law presently lacks clarity with respect to the relationship between the travel agency and its clients. Obviously the travel agency is an agent, but the question comes, whose agent? *181 Is it the agent of a hotel or other innkeeper with whom, or for whom, the agency transacts business? Or the steamship line or airline with whom it does business? Generally the travel agency is neither an agent nor an employee of the common carriers and innkeepers with whom it may do business. (Cf. Rose v. Sans Souci Hotel, 51 Misc 2d 1099.) Nor do we see any justification for holding the travel agent to be the agent of any intermediate wholesaler who may put together a “ package ” of accommodations.
The travel agent deals directly with the traveler. He must be charged with the duty of exercising reasonable care in securing passage on an appropriate carrier and lodging with an innkeeper. The money was paid over by the traveler to the defendant agency for that specific purpose.
News reports are constantly appearing with stories of travelers — many of them quite young — being stranded far from home or having vacation plans ruined because passage or lodging for which they have paid has not been provided. Who is to bear the responsibility? Is it some remote “ wholesaler ” who is unknown to the traveler, or the traveler himself, or the travel agency in whom the traveler has reposed his confidence?
Sometimes we must go deep into the past to find ancient principles and mold them to take care of new problems. The policy of the common law from ancient times has been to safeguard the traveler. Speaking of the rule at common law which held the innkeeper liable as an insurer of the property left in his custody by a guest, the court, in Hulett v. Swift (33 N. Y. 571, 572 [1865]) said: “The considerations of public policy in which the rule had its origin, forbid any relaxation of its rigor. The number of travellers was few, when this custom was established for their protection. The growth of commerce, and increased facilities of communication, have so multiplied the class for whose security it was designed, that its abrogation would be the removal of a safeguard against fraud, in which almost every citizen has an immediate interest. The rule is, in the highest degree, remedial. No public interest would be promoted, by changing the legal effect of the implied contract between the host and the guest, and relieving the former from his common-law liability. Innkeepers, like carriers and other insurers, at times, find their contracts burdensome; but in the. profits they derive from the public, and the privileges accorded to them by the law, they find an ample and liberal compensation. The vocation would be still more profitable, if coupled with new immunities; but we are not at liberty to discard the settled rules *182 of the common law, founded on reasons which still operate in all their original force. Open robbery and violence, it is true, are less frequent, as civilization advances; but the devices of fraud multiply with the increase of intelligence, and the temptations which spring from opportunity, keep pace with the growth and diffusion of wealth ”.
As foreseen by the court 100 years ago, the devices of fraud have indeed multiplied.
In this case nothing was done by the travel agency to verify or confirm either the plane reservations or the hotel reservations. If this duty is the responsibility of the travel agency, then the travel agency is liable in negligence for its failure to exercise reasonable care in making the reservations.
It may be urged that the default in this respect is that of the remote “ wholesaler ”.
Where, as here, the agent is selected because he is supposed to have some special fitness for the performance of the duties to be undertaken, the traveler is entitled to rely on the judgment and discretion of that agent as well as his honesty and financial responsibility. The agent may not evade responsibility by delegating to a subagent the carrying out of the task which has been committed to him. (Mechem, Agency [2d ed.], § 305.) Travel agencies may find it convenient, in the course of transacting their business, to deal with wholesalers. The news reports are so voluminous that we may take judicial notice of the vice inherent in conducting business in so loose a fashion. The wholesaler may fail to pay for accommodations or may even fail to book the accommodations and the traveler is left-in a helpless situation. He either has no recourse because of financial insufficiency or he may be required to travel to a distant jurisdiction in order to maintain a suit.
Unless the princiml, here the traveler, has expressly or impliedly authorized the travel agency to delegate responsibility to a second agency or “ wholesaler ”, the responsibility must remain on the defendant travel agency. In an area so fraught with danger to the traveler, public policy demands that the travel agency be held responsible to: (a) verify or confirm the reservations and (b) use reasonable diligence in ascertaining the responsibility of any intervening “ wholesaler ” or tour organizer.
This duty parallels, or is analogous to, the duty of an insurance broker in obtaining insurance coverage for his client. (Cf. Joseph, Inc. v. Alberti, Carleton & Co., 225 App. Div. 115, affd. 251 N. Y. 580; Shepard v. Davis, 42 App. Div. 462.)
*183 Claimant here did not consent to any delegation of the duty owed to her by the defendant travel agency.
The defendant is liable to the claimant for the breach of its fiduciary responsibility in failing to use reasonable care to confirm the reservations but the question of damages presents some difficulty. Generally, damages are not allowed for inconvenience in civil actions. However, there are exceptions.
In the case of a steamship company where there has been a violation of a contract for carriage and the accommodations which were contracted for have not been furnished, damages are not limited to the difference in the cost of the accommodations. A more liberal view of damages is applied and the traveler may be compensated for inconvenience and annoyance (Aplington v. Pullman Co., 110 App. Div, 250, 253).
In Owens v. Italia Societa per Azione Navigazione-Genova (70 Misc 2d 719), the court allowed one third of the total price of passage as damage for inconvenience where the accommodations which were to be furnished were not, in fact, furnished, and several ports of call were eliminated from the cruise.
The substance of the contract in this case was for a three-day vacation in Las Vegas. The price paid by the claimant for herself and her husband was $318. Substantial justice will be accomplished by allowing to the plaintiff on account of herself and her husband the sum of $106 for inconvenience and discomfort resulting from the change in accommodations.