UNITED AIRLINES, INC., Plaintiff and Counterdefendant-Appellee, *v.* DAVID D. LERNER *et al.*, Defendants and Counterplaintiffs-Appellants.

First District (3rd Division)   No. 79-753

Opinion filed August 20, 1980.

David D. Lerner, of Skokie, for appellants.

Linda S. Puvogel, of Chicago (Philip J. Hogan, of counsel), for appellee.

Mr. JUSTICE SIMON delivered the opinion of the court:

Plaintiff, United, failed to warn its customer, David Lerner, that the danger of avalanches might frustrate his wife's planned skiing vacation by causing police authorities to keep a road to the ski area closed. The circuit court granted summary judgment to United on both its complaint and Lerner's counterclaim, and we affirm.

As disclosed by the pleadings and affidavits, the underlying facts at this stage of the proceedings do not appear to be in dispute. In late December 1974, Lerner, the defendant-counterplaintiff, was interested in providing a week-long skiing vacation to his wife and son. He called United to inquire about arrangements for a ski tour package. At the time, United had published and was circulating a brochure entitled "Ski the West" which advertised package ski vacations it was booking. In it, United praised both the skiing conditions and the ambience of the ski resorts which it serviced in the western United States. The brochure stated that no one knew the ski country of the West like United, and announced that the airline has "* * * put it all together for you! Excellent accommodations * * * easy travel * * * colorful Old West atmosphere. . . exciting night life. . . powder skiing * * * and all at a price you can afford."

Lerner, who had a copy of the brochure, called United, and his call was switched to the "Ski Desk." He was told the Ski Desk handled all of the airline's ski packages and would inform and advise him of everything connected with the package ski vacation. In the following week, Lerner spoke several times with personnel at the Ski Desk. They gave him information on snow and weather conditions, descriptions of the facilities available at each Western ski resort, accommodation listings and transportation schedules. Lerner told the person he spoke to at the Ski Desk that his wife and son were interested in air transportation only as part of a skiing vacation.

The Lerners eventually settled on Alta, a ski resort in Utah some 25 miles outside Salt Lake City. The conditions at Alta are unique, and it has a reputation for having the best "powder" snow on the continent. But access to Alta is by a single road over a mountain pass. Early in January 1975, David Lerner went to United's office in Chicago and executed the necessary documents for a package ski vacation at Alta from January 9 to 15. His wife and son were scheduled to fly from Chicago to Salt Lake City on United, then stay at the Alta Peruvian Lodge. No provision was made for ground transportation between Salt Lake City's airport and the lodge. The return flight to Chicago was routed through Denver, again on United. The cost of the package was $738.20. Lerner charged the cost to his United credit card, and United provided him with airline tickets, hotel vouchers and ski lift tickets.

Mrs. Lerner and her son left Chicago on January 9. When they arrived in Salt Lake City, she went to the information desk to inquire about bus transportation to the lodge, and was told that the Utah State Forest Service had closed the only mountain pass to Alta the day before because of the danger of avalanches. Alta was temporarily cut off.

Mrs. Lerner called the Utah State Police and learned that the road might "possibly" be opened the next day. To pass the time, the Lerners stayed that night in Salt Lake City and went sightseeing the next day. On January 10, the State police allowed some skiers to use the road to descend from the ski areas, but would not permit traffic on it going up into the mountains. The Lerners spent January 11 skiing at Park City, another ski area in the region, but conditions there were poor and the skiing, though accessible, was unsatisfactory. On January 12, they renewed their efforts to salvage their vacation by again skiing at Park City, but conditions remained poor.

On the afternoon of January 12, the Lerners were finally allowed to drive into Alta. They reached their lodgings in the evening and were able to ski at Alta on January 13 and 14. After a half-day of skiing on January 15, they flew home on their scheduled flight. Mrs. Lerner said that her vacation was totally ruined, and that if she had known that access to Alta

was restricted on January 9, she never would have departed Chicago. The Peruvian Lodge in Alta reimbursed the Lerners for the prepayment they had made for the three nights they were unable to stay there. The Lerners were not, however, reimbursed for their alternate accommodations and expenses in Salt Lake City and Park City.

United brought this suit to collect the unpaid balance of Lerner's credit account, which included the charge for the ski package as well as a previous unpaid balance of $416.65. United asked for a total of $1,179.88 in damages. In its complaint, United alleged that the unpaid bills were for air transportation which it had furnished. Lerner counterclaimed, alleging breach of contract, willful and negligent failure to notify of matters material to the traveler-travel agent relationship and fraudulent misrepresentation.

United had no obligation to provide ground transportation from Salt Lake City to Alta. So, it did not breach its written contract with Lerner by failing to provide such transportation. The brochure which formed the heart of the contract did not mention ground transportation between the Sale Lake City airport and the Alta Peruvian Lodge. By contrast, the brochure stated that other Alta lodges provided a shuttle bus to the airport. Nor did United fail to provide air transportation or ground accommodations. It flew the Lerners to Utah; their lodgings were there for them to use. It was only because of the closed road that these accommodations went unused, but that was not a breach of United's contract.

■■ The pleadings and affidavits adequately alleged the existence of an agency relationship between United and the Lerners. A travel agent is one who, in the interest of promoting the travel plans of a client, deals with carriers, plans an itinerary, arranges for hotel accommodations, guides and tours of each city and sets up the traveler's schedule. (*Simpson v. Co. Nationale Air France* (1969), 42 Ill. 2d 496, 498, 248 N.E.2d 117.) The airline here had two interests. It sought to lure Lerner into booking a flight on its line, but as an inducement to fly United it also sought to arrange the ski vacation in an area to which United flew. The airline did not deal with carriers, since it itself was a carrier. But through its Ski Desk, United helped Lerner plan his family's itinerary, arranged their accommodations at the Peruvian Lodge, obtained lift tickets for use at the Alta ski area and determined the schedule for the Lerner's departure and return. Thus, while United was a common carrier, it also satisfied the definition of a travel agent under Illinois law. The public policy that favors the traveler supports this conclusion. See *Hulett v. Swift* (1865), 33 N.Y. 571, cited in *Bucholtz v. Sirotkin Travel Ltd.* (1973), 343 N.Y.S.2d 438, 441.

■■ As a travel agent, United owed certain duties to the Lerners. A travel agent is a special agent, akin to a broker, which engages in a single

business transaction with the principal. (*Rosen v. DePorter-Butterworth Tours, Inc.* (1978), 62 Ill. App. 3d 762, 765, 379 N.E.2d 407, 410.) Like every agent, the travel agent owes duties of service and due care to the principal. While there is no duty of investigation, the travel agent must disclose all information the agent learns which is material to the object of the agency. (*Simpson,* at 498; Restatement (Second) of Agency §381 (1958).) Likewise, all travel agents owe a duty of loyalty to their principals. Restatement (Second) of Agency §387 (1958).

■■ The law requires only that agents be loyal, not prescient. United was not required to tell Lerner of *possible* hindrances to his vacation. We are not concerned here with a certain event that would make the successful completion of the travelers' plans impossible. The problem here was that the State authorities closed the road because of the danger of avalanches. Temporarily the road was closed, to be sure, but, as Mrs. Lerner's affidavit set forth, even the State police were not sure when the road would be opened. The threat to the Lerners' vacation was but potential. The road might have opened if the danger had passed before the Lerners even reached Salt Lake City; to have alerted the Lerners in that case might have constituted an unnecessary warning.

Not knowing that the vacation was an impossibility, United was not required to inform its clients of potential dangers ahead. The circuit court correctly relied on *Semmelroth v. American Airlines* (E.D. Ill. 1978), 448 F.Supp. 730, in granting summary judgment to United. In that case, the plaintiff, whose deceased was murdered by an armed band of guerrillas while visiting Mexico, tried to impose upon the airline the duty to warn its passengers (for whom it had booked package vacations) of potential guerrilla activity. The court held that there was no such duty on the airline to warn the passenger. If guerrilla activity which mushroomed into armed and violent tragedy was not enough to create a duty, then police action closing a road temporarily is not enough either.

Similarly, if United's fiduciary duties did not require this disclosure, then the failure to notify the Lerners that the pass was closed did not constitute fraudulent misrepresentation.

The circuit court correctly granted the airline's motion for summary judgment while denying Lerner's.

Judgment affirmed.

McNAMARA and RIZZI, JJ., concur.