Ted MARKLAND, Sharon Markland,
Roger Markland and Elsie
Markland, Plaintiffs–Appellants,

v.

TRAVEL TRAVEL SOUTHFIELD,
INC., d/b/a Travelplex Southfield,
Inc., Defendant–Respondent.

No. 58814.

Missouri Court of Appeals,
Eastern District,
Division One.

April 9, 1991.

Rehearing Denied May 15, 1991.

Frank Susman, Randall B. Kahn, St. Louis, for plaintiffs-appellants.

R. Jon Bopp, Ballwin, for defendant-respondent.

PUDLOWSKI, Presiding Judge.

On December 24, 1988, appellants, Ted and Sharon Markland and Roger and Elsie Markland (hereinafter the Marklands) requested the respondent, Travel Travel Southfield, Inc. (hereinafter Travel Travel) to arrange airline and hotel accommodations for them to St. Croix, United States Virgin Islands. At that time, Sharon instructed Travel Travel that the Marklands wanted to spend their vacation during the first two weeks in March, 1989, at St. Croix and that they desired to stay at the Hotel On the Cay. She also testified that Travel Travel should change the dates of the trip if it was unable to book them into the Hotel On the Cay during the time period that she had specified.

Subsequently, Travel Travel arranged for such trip on Eastern Airlines (hereinafter Eastern) and Flyfaire Vacations (hereinafter Flyfaire), a subsidiary of Eastern. On December 27, 1988, Travel Travel mailed a confirmation to the Marklands that they were booked on a vacation to St. Croix for fourteen nights at the Hotel On the Cay for the first two weeks of March, 1989. The confirmation statement indicated that the Marklands would be traveling on Eastern Airlines.[1] The confirmation

---

1. The trial testimony reveals that the Marklands were unaware of any financial problems that

statement also included Travel Travel's standard "customer disclosure notice"[2] printed in small type at the top of the form. Included in this "customer disclosure notice" was Travel Travel's disclaimer for any breach of contract in regard to their travel suppliers. The disclosure advises any traveler that they should purchase appropriate insurance coverage in case of any loss. Testimony at trial indicated that if Travel Travel had followed their normal routine business procedures, a travel insurance application also would have been included with the confirmation statement. The Marklands testified that no travel insurance application was ever received by them at any time.

On January 10, 1989, the Marklands received an invoice from Travel Travel in the amount of $6,548.00, which they promptly paid. Again, printed at the top of this invoice was the "customer disclosure notice." Travel Travel stated at trial that a travel insurance application should have been included with this invoice. The Marklands stated they never received any such application. One week prior to the date of departure (March 1, 1989), Ted Markland obtained both the airline tickets and the travel vouchers from the travel agency, which were to be presented to the hotel in St. Croix. Included was the passenger itinerary, dated February 17, 1989, with the "customer disclosure notice" again printed at the top of the form. Also, Judy Katzenmeyer, the travel agent that booked the

Marklands' trip, testified at that time that she informed Ted Markland that Eastern was having financial problems. Her testimony in pertinent part was as follows:

Q  [Mr. Bopp] Okay. At that time, did you mention anything about travel insurance?

A  [Judy Katzenmeyer] Well, that's where my memory differs from Ted because I do think Eastern was then having problems, and I think I said to Ted, "Are you sure you want to do this?" And I think he said, "Yes, we'll take a chance"; but I'm not sure.

Q  But that's your recollection?

A  That's my recollection.

However, Ted Markland disputes this testimony.

On March 1, 1989, the Marklands left for St. Croix on their scheduled Eastern flight. Upon arriving in St. Croix they tendered their hotel vouchers for their hotel accommodations to the hotel (Hotel On The Cay). However, ten days after the Marklands arrival, the hotel informed them that their hotel vouchers were no longer valid as a result of Eastern and Flyfaire declaring bankruptcy, and that no monies had been paid to the hotel. Thus, on March 12, 1989, the Marklands had to pay the hotel an additional $4,900 for their accommodations. Also, because of the Eastern Airlines bankruptcy, the Marklands incurred additional air fare charges of $1,756 on a different airline carrier in order to return to St.

---

Eastern might be facing at that time.

2. Included in Travel Travel's "customer disclosure notice" they declare themselves to be the agent of their travel suppliers (principals). However, the jurisdictions that have been presented with this issue hold that a "travel agency is neither an agent nor an employee of the common carriers and inn keepers with whom it may do business." *Bucholtz v. Sirotkin Travel Ltd.,* 74 Misc.2d 180, 343 N.Y.S.2d 438, 440 (1973). Rather, the relationship should be considered an independent contractual one in relation to each other. *Ostrander v. Billie Holm's Village Travel,* (1976) 87 Misc.2d 1049, 386 N.Y.S.2d 597, 599; *Dorkin v. American Express Co.,* 74 Misc.2d 693, 345 N.Y.S.2d 891, *affd.* 43 A.D.2d 877, 351 N.Y.S.2d 190.

Additionally, the "courts will not be controlled in the determination of the existence of agency by the presence or absence of the label."

Wohlmuth, "The Liability of Travel Agents: A Study in the Selection of Appropriate Legal Principals," 40 Temple L. Quarterly 29, 38, (1966); *See also Cason v. Aetna Life Insurance Co.* (1954), 91 Ga.App. 323, 85 S.E.2d 568. Courts will also not be influenced by the belief of either party as to whether or not an agency relationship has been created. RESTATEMENT (SECOND), Agency § 1, comment b (1958); *See also* Wohlmuth, *supra* at 38. An agency relationship is found to exist only where the agreement results in a factual relationship containing the elements of agency. RESTATEMENT (SECOND) Agency § 1, comment b (1958). Also, both the Air Traffic Conference and the International Air Transport Association have stipulated in their agreements that a "travel agent shall not hold [themselves] out to the public in any way as a general agent or use any other designation indicating that [their] office is an office of the carrier." Wohlmuth, *supra* at 39.

Louis from St. Croix. Upon returning to St. Louis, the Marklands demanded of Travel Travel that their money be returned for both the additional hotel charges and the return airline ticket charges. This demand was refused. However, Travel Travel filed, on behalf of the Marklands, Eastern and Flyfaire bankruptcy claim forms with the bankruptcy court.

On September 26, 1989, the Marklands filed an action against Travel Travel alleging breach of contract in arranging the Marklands' "package vacation" to St. Croix and alleging $6,656 in damages for the additional travel expenditures incurred. ($1,756 for the return air fare and $4,900 for the hotel charge). On July 30, 1990, the trial court entered judgment for the Marklands against Travel Travel in the amount of $654.80. The court arrived at this figure by using the 10% commission which the travel agency is credited from Eastern on the total "package price" of the vacation which was $6,548. The trial court further ordered that Travel Travel hold for the benefit of the Marklands in trust and deliver to the Marklands all sums that may be refunded from Eastern or Flyfaire as a result of the bankruptcy reorganization proceedings either as cash, air fare credits, scrip or any and all other evidences of debt owned by Eastern, Flyfaire, or its subsidiaries. On August 2, 1990, the Marklands filed this appeal.

The Marklands contend on appeal that the trial court erred in awarding damages in the amount of $654.80 where there was no evidence to support such an award and they further contend that the undisputed evidence was that the Marklands incurred $6,656 in damages as a result of Travel Travel's breach of contract.[3]

In argument to the trial court, the Marklands maintained that a travel agent is an agent of the customer and if something goes awry, the agent is liable under a breach of contract. We agree that a travel agent is an agent of the customer. As the court said in *George v. Lemay Bank & Trust Co.*, 618 S.W.2d 671, 674 (Mo.App.

1980), the relationship of principal and agent arises out of contract, express or implied. It is an agreement whereby one person, the agent, consents with another, the principal, to act on behalf of the principal subject to the control of the principal.

Here Travel Travel consented with the Marklands to act on their behalf to obtain for the Marklands travel accommodations. Travel Travel was subject to the control of the Marklands and were subject to their acceptance or rejection of any arrangement Travel Travel had suggested.

The Marklands argue that Travel Travel, as their agent, had a duty to advise them of the precarious labor and financial position of Eastern and a duty to suggest to them to procure travel insurance. Because we have determined that Travel Travel is an agent of the customer we reject Travel Travel's position that they are agents of Eastern and its subsidiary. We therefore must determine the scope and nature of the duty a travel agent owes the principal purchaser of travel arrangements. This court has been cited to no Missouri state court case discussing the nature of the relationship between a travel agent and its customer, nor has this court's independent research revealed any such Missouri case. Nonetheless, this court's independent research has revealed other opinions that discuss the nature of this relationship.

The weight of authority in the United States holds that a travel agent who arranges vacation plans and therefore acts as more than a "ticket agent" is a special agent of the traveler for the purposes of that one transaction between the parties. *McCollum v. Friendly Hills Travel Center,* 172 Cal.App.3d 83, 217 Cal.Rptr. 919 (1985). *See United Airlines, Inc. v. Lerner* (1980), 87 Ill.App.3d 801, 43 Ill.Dec. 225, 227, 410 N.E.2d 225, 227; *Josephs v. Fuller (Club Dominicus)* (1982) 186 N.J. Super. 47, 451 A.2d 203, 205; *Bucholtz v. Sirotkin Travel, Ltd.* (1973), 74 Misc.2d 180, 343 N.Y.S.2d 438; *affd.* (1974), 80 Misc.2d 333, 363 N.Y.S.2d 415. "A travel agent is a special agent, akin to a broker,

3. Travel Travel did not appeal from the trial court's judgment. We, therefore, only address

Markland's sole point on appeal.

which engages in a single business transaction with the principal." *United Airlines, Inc. v. Lerner, supra* 43 Ill.Dec. at 228, 410 N.E.2d at 228; *Rosen v. DePorter–Butterworth Tours, Inc.* (1978), 62 Ill.App.3d 762, 19 Ill.Dec. 743, 746, 379 N.E.2d 407, 410. "Like every agent, the travel agent owes duties of service and due care to the principal." *United Airlines, Inc. v. Lerner, supra* 43 Ill.Dec. at 228, 410 N.E.2d at 228; *Simpson v. Co. Nationale Air France* (1969), 42 Ill.2d 496, 498, 248 N.E.2d 117; Restatement (Second) Agency § 379 (1957). And as well, every travel agent owes a duty of loyalty to its principals. Restatement (Second) Agency § 387 (1957). *United Airlines v. Lerner, supra* 43 Ill.Dec. at 228, 410 N.E.2d at 228. As agent, a travel agency has a duty to use reasonable efforts to apprise a customer of information material to the agency which the travel agency has notice the customer would desire. *McCollum v. Friendly Hills Travel Center, supra* 172 Cal.App.3d at 92, 217 Cal.Rptr. 919. Restatement (Second) Agency, § 381 (1957). However, "[t]he scope of this duty of disclosure will be limited, naturally, to what is reasonable on any given instance." *Rookard v. Mexicoach,* (9th Cir.1982) 680 F.2d 1257, 1263.

In *United Airlines, Inc. v. Lerner, supra* 43 Ill.Dec. at 228, 410 N.E.2d at 228, the court determined that "[w]hile there is no duty of investigation, the travel agent must disclose all information the agent learns which is material to the object of the agency." The court held that the travel agent did not breach a duty by failing to warn traveler of the potential for weather conditions causing temporary road closures thereby interrupting traveler's ski vacation. The court reasoned that "[t]he law requires only that agents be loyal not prescient." *United Airlines, Inc. v. Lerner, supra* 43 Ill.Dec. at 228, 410 N.E.2d at 228. Also, where the travel agency is unaware that the vacation is not an impossibility, the travel agency is not required to inform its clients of potential danger ahead. *United Airlines, Inc. v. Lerner, supra* 43 Ill.Dec. at 228, 410 N.E.2d at 228. Based upon this analysis, the Court concluded that a travel agent has a duty to disclose reasonably obtainable relevant information to the traveler unless that information is so clearly obvious and apparent to the traveler that, as a matter of law, the travel agent would not be negligent in failing to disclose it. *McCollum v. Friendly Hills Travel Center, supra* 172 Cal.App.3d at 94, 217 Cal. Rptr. 919.

In the case at bar, the evidence revealed that the agent, Travel Travel, derived its information about Eastern's problem from the same sources as the Marklands. It had no "inside information." The threat of either a labor strike or bankruptcy of Eastern Airlines or its subsidiary, Flyfaire, was only a potential occurrence possibility. Both the principal and the agent were aware of this likelihood. In addition, the agent advised the principals, although in very small print, that they could protect themselves from loss by purchasing travel insurance. In addition, Travel Travel, in strict compliance with the requests of the Marklands, performed all of its duties. The Marklands requested air transportation to and from St. Croix and specific hotel accommodations. Within three or four days the travel agent had made such arrangements. In connection with the arrangements, the Marklands received the confirmation of the plan which enumerated the airline and the hotel, the time of arrival and departure. The principals were obviously satisfied with the arrangements and sent their check to the agency some ten days later. They had approximately six weeks to change their accommodations but did not and they fetched the documents one week prior to their departure.

We conclude that Travel Travel, as a matter of law, was the agent of the Marklands. The agent acted reasonably and it did not neglect its duty of ordinary care. There was no evidence to support a finding of a breach of agency. Accordingly, Marklands' point denied.

Judgment affirmed.

KAROHL and GRIMM, JJ., concur.