890 P.2d 69

Larry MAURER and Linda Maurer, husband and wife, personally and on behalf of the Estate of Molly Marie Maurer, Deceased, Plaintiffs/Appellants,

v.

CERKVENIK–ANDERSON TRAVEL, INC., an Arizona corporation; College Tours, a division of Cerkvenik–Anderson Travel, Inc.; Dennis Anderson and Jane Doe Anderson, husband and wife; Anton Cerkvenik and Jane Doe Cerkvenik, husband and wife; and John Does I–X, Defendants/Appellees.

Larry MAURER and Linda Maurer, husband and wife, personally and on behalf of the Estate of Molly Marie Maurer, Deceased, Cross–Appellees.

v.

CERKVENIK–ANDERSON TRAVEL, INC., an Arizona corporation; College Tours, a division of Cerkvenik–Anderson Travel, Inc.; Anton Cerkvenik and Jane Doe Cerkvenik, husband and wife. Cross–Appellants.

No. 2 CA–CV 93–0175.

Court of Appeals of Arizona, Division 2, Department B.

May 17, 1994.

Review Denied Dec. 20, 1994.*

* Moeller, V.C.J., and Zlaket, J., of the Supreme Court, recused themselves and did not partici-   pate in the determination of this matter.

Treon, Strick, Lucia & Aguirre by Arthur G. Newman, Jr. and Richard T. Treon, Phoenix, for plaintiffs/appellants/cross-appellees.

Teilborg, Sanders & Parks, P.C. by Brian R. Burt and Rick N. Bryson, Phoenix, for defendants/appellees/cross-appellants.

Jennings, Kepner and Haug by James L. Csontos, Phoenix, for defendants/appellees Dennis Anderson.

## OPINION

HATHAWAY, Judge.

In this action for the wrongful death of their daughter Molly, plaintiffs/appellants Maurers appeal from the trial court's grant of summary judgment in favor of defendants/appellees Cerkvenik–Anderson Travel, Inc., College Tours, Dennis Anderson and Anton Cerkvenik (collectively, "CA") on the basis that CA had no duty to Molly regarding the tour package she purchased. CA cross-appeals the court's denial of summary judgment sought on the basis of waiver or release from liability and its refusal to award attorney's fees. We reverse summary judgment as to appellants and affirm as to CA.

## FACTS

Viewing the evidence in the light most favorable to the non-moving party, *Nicoletti v. Westcor, Inc.*, 131 Ariz. 140, 639 P.2d 330 (1982), the facts are as follows. CA is a travel agency doing business as "College Tours." Its business includes organizing, promoting, selling and operating student vacation tours destined for Mazatlan, Mexico. CA sets the itinerary, arranges for transportation and lodging and provides information relating to the students' comfort, convenience and safety on the tour. For many years, the tour packages have included an eighteen-hour ride on a Mexican train traveling from Nogales to Mazatlan, as was the case with the tour purchased by the decedent. CA described this as a "Party Train."

During the train ride from Nogales to Mazatlan, Molly and a friend decided to "adventure" forward in the train to see the engine. The connecting areas between passenger railcars have metal floors with accordion-like "boots" extending from the sides of each railcar, forming an area in which it is safe to walk from the door at the end of one railcar to the door at the end of the other. En route, Molly paused and attempted to communicate in Spanish with an apparent employee of the railroad before going through a door, which turned out to be the front door of the foremost passenger car of the train. The car in front of this car was either a freight car or the engine. There was only a partial "boot" between the front of this car and the car in front of it. Beyond the door was only a narrow platform and then a large area between the cars, up to four feet wide, open straight down to the tracks and wheels of the train. It was dark, and after Molly stepped through the door, she fell to her death between the cars.

Molly was the fourth student to die by falling from a moving train on a student tour to Mazatlan organized by CA. Three other students had died previously, albeit the particular circumstances of each incident varied. The students on Molly's tour were not informed of these prior incidents even though CA acknowledges that it "knew of other deaths on Mexican trains."

## DUTY OF TRAVEL AGENTS/TOUR OPERATORS

Appellants contend that CA had a duty (1) to exercise reasonable care for the safety of students in operating its student tours; (2) to disclose material facts affecting safety in promoting and selling its tours; and, (3) not to make misrepresentations in promoting and selling its tours. CA counters that it had no such duties as a travel agent, it lacked the right to control the train to make it safe, and it had no knowledge of the specific condition which caused Molly's death.

■ The existence of duty is an issue of law for the court to decide, *Markowitz v. Arizona Parks Board,* 146 Ariz. 352, 706 P.2d 364 (1985), not to be confused with details of conformance with a standard of conduct imposed by the relationship. *Ibid.* 146 Ariz. at 355, 706 P.2d at 367; *see also, Lasley v. Shrake's Country Club Pharmacy, Inc.,* 179 Ariz. 583, 880 P.2d 1129 (1994). Whether a duty exists is a question of whether one of the parties to a relationship is under an obligation to use care to avoid or prevent injury to the other. " '[D]uty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff." W. Page Keeton, et al., *Prosser and Keeton on The Law of Torts* § 53 at 356 (5th ed. 1984). "If the court decides that no duty exists, then a trial is unnecessary." Lankford & Blaze, *The Law of Negligence in Arizona* at 11 (1992). In this case, the trial court concluded that a trial was unnecessary because "no duty was owed by [CA] to [appellants'] decedent for the injuries which led to her death." We disagree.

■ To conclude there is "no duty" is to conclude the defendant cannot be liable, no matter the facts. As the supreme court observed in *Markowitz:* "To postulate that the possessor of land has no duty at all to protect its invitees or warn of specific types of danger is to postulate that it can never be liable, no matter what the circumstances." 146 Ariz. at 357, 706 P.2d at 369. The court asked the poignant question: "Would the state have been liable even if the park ranger, knowing of the hazard, had sat on the rock, watched David get ready to dive and said nothing?" *Id.* at 356, 706 P.2d at 368.

■ Adapting that query to the instant case, we believe an affirmative answer as to CA's responsibility is compelled under principles governing agency relationships. As an Oklahoma court well summarized in *Douglas v. Steele,* 816 P.2d 586, 589 (Okla.App.1991):

> An agent who handles travel and vacation plans is a special agent of the traveler for purposes of that one transaction between the parties.... And this is so even though the agent's compensation may be paid by the company to whom she steers the business, much like an advertising agent....
>
> [The travel agent has] a duty to act with the care, skill and diligence a fiduciary rendering that kind of service would reasonably be expected to use.... This agency relationship also impose[s] a duty to promptly communicate to [the] principals confirmations and all other relevant information about the proposed travel plans and tours which would help them protect themselves from harm or loss.

(Citations omitted.) These duties include the duty to disclose material dangers known to the agent. *See* Tracy A. Bateman, Annotation, *"Liability of Travel Publication, Travel Agent, or Similar Party for Personal Injury or Death of Traveler,"* 2 A.L.R. 5th 396 (1992). This duty to disclose or warn of known dangers, as the court explained in *Rookard v. Mexicoach,* 680 F.2d 1257, 1263 (9th Cir.1982), "does not represent an extension of tort liability upon an agent[;] it results from an exposition of the pre-existing duty of care owed a principal by his agent." *See also In re Swartz,* 129 Ariz. 288, 294, 630 P.2d 1020, 1026 (1981) (agent's duty to make full disclosure to principal of all material facts relevant to agency is fundamental to fiduciary relation); *Walston & Co. v. Miller,* 100 Ariz. 48, 410 P.2d 658 (1966); Restatement (Second) of Agency § 381 (1957), states the duty thusly:

> Unless otherwise agreed, an agent is subject to a duty to use reasonable efforts to give his principal information which is relevant to affairs entrusted to him and which, as the agent has notice, the principal would desire to have and which can be communi-

cated without violating a superior duty to a third person.

■ The travel agent's duty to disclose is not without limits, however.

The scope of this duty of disclosure will be limited, naturally, to what is reasonable in any given instance. A travel agent is not an insurer, nor can he be reasonably expected to divine and forewarn of an innumerable litany of tragedies and dangers inherent in foreign travel. Nonetheless, it does not follow that because a travel agent cannot possibly presage all dangers, he should be excused entirely from his fiduciary duties toward his principal to warn of those dangers of which he is aware, or should be aware in the exercise of due care.

*Rookard*, 680 F.2d at 1263. "While there is no duty of investigation, the travel agent must disclose all information the agent learns which is material to the object of the agency." *United Airlines, Inc. v. Lerner*, 87 Ill.App.3d 801, 803–04, 43 Ill.Dec. 225, 228, 410 N.E.2d 225, 228 (1980); Restatement (Second) of Agency, § 381 (1957).

In this case, because of the duties existing through the agency relationship, the trial court erred in ruling otherwise.

## CONSUMER FRAUD ACTION

■ Appellants contend that CA violated the Consumer Fraud Act (Act), A.R.S. § 44–1521, et seq., by omitting material facts and making misrepresentations to Molly in selling and promoting its tours. A private right of action exists for breach of the Act. *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 521 P.2d 1119 (1974). Under the Act, it is unlawful for any person to use or employ

any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived, or damaged thereby, . . .

A.R.S. § 44–1522(A). The term "merchandise" includes "services." A.R.S. § 44–1521(5). Accordingly, CA can be held liable for misrepresentations and "concealment, suppression or omission" of any material fact in selling its services.

■ Appellants contend the trial court evidently held, death, as a matter of law, is not a type of damage for which a private right of action may be brought under the Act. Appellants point out that they have found only one case in the nation that has considered the question. *Duncavage v. Allen*, 497 N.E.2d 433, 147 Ill.App.3d 88, 100 Ill.Dec. 455 (1986) (claim held to have been stated in suit against landlord for consumer fraud act violation for death of tenant based on representations and omissions about building safety.)

Appellants argue that no policy reason exists to exclude death as an injury for which a private action for damages may be brought under the Act when the omission of material information about safety has caused the death of the purchaser. They also contend that such a view is consistent with Arizona decisions in which the omission of information one has a duty to disclose causes death. *See, e.g., Robertson v. Sixpence Inns of America, Inc.*, 163 Ariz. 539, 789 P.2d 1040 (1990) (trial court erred in ruling that motel owner owed no duty to disclose information about earlier presence of robber to independent contractor security guard who was later shot and killed by robber.) Moreover, appellants contend that neither the Act nor the cases interpreting it exclude death caused by a breach of the Act; rather, the cases have considered as an element of the cause of action the general "consequent and proximate injury" to the victim. *See, Parks v. Macro–Dynamcis, Inc.*, 121 Ariz. 517, 591 P.2d 1005 (App.1979).

Finally, appellants argue that if a private right of action had not been recognized in Arizona, the statute is the sort the violation of which would have been treated as negligence *per se* and that death is a cognizable injury within the scope of an action for negligence *per se*. *Ontiveros v. Borak*, 136 Ariz. 500, 667 P.2d 200 (1983). They persuasively conclude that, "[r]ecognition of a private

right of action should not reduce the relief that would ... otherwise have been available under negligence per se without the private right of action." We agree.

We do not find any basis for an exemption when the damage resulting from the alleged violation is death. Accordingly, the trial court erred in granting summary judgment as to appellants' claim under the Consumer Fraud Act.

## CROSS–APPEAL ON CONTRACTUAL RELEASE/WAIVER OF LIABILITY

CA contends in its cross-appeal that even assuming the existence of a duty, summary judgment against appellants must be affirmed because Molly released and/or waived any claim against them for any acts or omissions that led to her death. This issue has been raised both in the cross-appeal and as a cross-issue on appeal.

Molly's itinerary contained the following provision:

XV. Terms and Conditions

... **The purchaser releases and absolves College Tours from all liability for property loss or damage, caused and/or from all damages resulting in death or personal injury, loss of services, which may be sustained on account of, arising out of or while engaged in said trip, whether due to its own negligence or otherwise.**

(Bold in original) The itinerary also contained a paragraph expressly entitled "Waiver of Liability." This provision was set out separately from the other paragraphs in the itinerary and provided:

**The students and the students [sic] relatives hereby waive any [sic] or liability for property damage, or personal injury, or death (Including the loss of services), which may be sustained by any student on account of, arising out of, or while engaged in said trip unless claimant establishes that the person or entity, versus whom the claim is made, violated the law or was guilty of a willful injury. Any alleged violation of law or willful injury must be the direct cause of the injury complained of; otherwise, the**

**student and anyone making a claim as a result of any injury, damage or death to said student, hereby waives any such claim. All potential claimants hereby acknowledge that there are other means and tours available to visit Mexico or Hawaii and the student is not in an inferior bargaining position and thus freely accepts the responsibility contracted for herein. Each client has the right to choose to attend or not attend any event provided by College Tours and does so at their own discretion.**

(Bold in original) Molly received an invoice form that also contained a "Waiver of Liability" provision virtually identical to that contained in the itinerary. It also contained a certification that the customer had read the flyer, waiver of liability and the itinerary acknowledged by her payment for the trip that she had read the information, agreed to it and understood all its terms and conditions. A copy of the invoice was returned to CA with Molly's final payment for the trip.

■ In denying the defense motion for summary judgment on the release/waiver issue, the trial court explained:

This Court does not find waiver to be a valid defense to Plaintiffs' claims. The alleged defense is too general and doesn't alert Plaintiffs' decedent to the specific risks that she was supposedly waiving. Because the danger being waived was so specific and obvious in *Valley National Bank v. National Assoc. for Stock Car Auto Racing, Inc.*, 153 Ariz.App. [sic] 374, 736 P.2d 1186 (App.1987), that Court allowed the waiver to defeat Plaintiff's claims. Here, the danger is too defuse [sic] and unspecific for a valid waiver to apply.

We find merit in the trial court's distinction. Attempts to release oneself from liability by contract for harm caused by one's own negligence are not looked upon with favor. "This would tend to encourage carelessness." *Salt River Project Agric. Improvement & Power Dist. v. Westinghouse Elec. Corp.*, 143 Ariz. 368, 382, 694 P.2d 198, 212 (1984).

■ While an agent may be discharged from liability by an effective release, Restate-

ment (Second) of Agency § 419 (1957), such agent is under the "duty of disclosure and fair dealing stated in Section 390." That section provides that an agent

> has a duty to deal fairly with the principal and to disclose to him all facts which the agent knows or should know would reasonably affect the principal's judgment, unless the principal has manifested that he knows such facts or that he does not care to know them.

Thus, although we conclude that CA is a seller to consumers and an agent bound by statutory and common law duties, we are unable to determine from the limited record before us whether the release is valid. Whether CA fulfilled its duty to Molly under Section 390 must await further discovery or trial. Accordingly, the court's order denying CA's Motion to Dismiss/Motion for Summary Judgment on waiver/release grounds is affirmed.

Reversed in part; affirmed in part.

DRUKE, C.J., and ESPINOSA, P.J., concur.