OPINION OF THE SUPREME COURT OF NEBRASKA

NOTICE: DUE TO UNFORESEEN CIRCUMSTANCES, THIS OPINION IS BEING POSTED TEMPORARILY IN "SLIP" OPINION FORM. IT WILL BE REPLACED AT A LATER DATE WITH AN "ADVANCE" OPINION, WHICH WILL INCLUDE A CITATION.

Case Title

JEANNETTE L. MCREYNOLDS, APPELLANT,
V.
RIU RESORTS AND HOTELS, S.A., ET AL., APPELLEES.

Case Caption

MCREYNOLDS V. RIU RESORTS & HOTELS

Filed April 15, 2016.    No. S-15-423.

Appeal from the District Court for Douglas County: J. MICHAEL COFFEY, Judge. Affirmed.

James R. Place, of Place Law Office, for appellant.

Dan H. Ketcham and Sara K. Houston, of Engles, Ketcham, Olson & Keith, P.C., for appellees The Mark Travel Corporation, doing business as Funjet Vacations, and Ultimate Cruise and Vacation, Inc.

McREYNOLDS v. RIU RESORTS & HOTELS

Filed April 15, 2016.    No. S-15-423.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. **Negligence.** The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation.

3. **Judgments: Appeal and Error.** When reviewing a question of law, an appellate court resolves the question independently of the conclusion reached by the trial court.

4. **Negligence: Damages: Proximate Cause.** In order to prevail in a negligence action, a plaintiff must establish the defendant's duty to protect the plaintiff from injury, a failure to discharge that duty, and damages proximately caused by the failure to discharge that duty.

5. **Negligence.** The threshold inquiry in any negligence action is whether the defendant owed the plaintiff a duty.

6. **Negligence: Words and Phrases.** A "duty" is an obligation, to which the law gives recognition and effect, to conform to a particular standard of conduct toward another.

7. **Negligence.** If there is no duty owed, there can be no negligence.

8. **Agents: Negligence.** Travel agents do not owe a duty to disclose information about obvious or apparent dangers.

HEAVICAN, C.J., WRIGHT, CONNOLLY, MILLER-LERMAN, CASSEL, and STACY, JJ.

CASSEL, J.

## NATURE OF CASE

After Jeannette L. McReynolds' jewelry was stolen from a safe in her hotel room, she sued the companies that arranged her vacation, claiming that they should have warned her the hotel's key system did not meet industry standards and that they breached their contractual duty to provide a safe hotel room. The district court entered summary judgment in favor of the companies, and McReynolds appeals. Because we conclude that the companies did not owe a duty to warn McReynolds about the obvious defect of the key system and that McReynolds failed to produce evidence showing that a genuine issue of material fact exists regarding her breach of contract claim, we affirm.

## BACKGROUND

### VACATION

In February 2011, McReynolds traveled to a resort in Puerto Vallarta, Mexico. The trip was an all-inclusive vacation package arranged by two companies, Ultimate Cruise and Vacation, Inc., and The Mark Travel Corporation, doing business as Funjet Vacations (collectively the companies).

When McReynolds checked into the hotel in Mexico, she received a key to the safe in her room, and she began storing her jewelry and cash in the safe. A few days later, a traveling companion told her that she should not keep her room key in the same bag as her safe key, because her room number was engraved on her room key. He told her that she "should keep them separate because of [their] sitting down at the beach, going in the water and how unattended [her] beach bag was." After receiving this advice, McReynolds continued to use the safe and began to hide the safe key in her room. She did not consider keeping the safe key on her person or giving it to another person for safekeeping, and she did not ask the companies for recommendations regarding where to keep the key.

Near the end of her stay, McReynolds left her room and stowed eight pieces of jewelry and some cash in the safe. She hid the safe key inside a purse and hid the purse inside a drawer in her room before she left. When McReynolds returned, she discovered that the safe key was missing and that the safe was locked. Hotel staff used a drill to open the safe, which was empty. There were no signs that entry into the room was forced.

Hotel staff reported the theft to the police, but McReynolds never recovered the items taken from the safe. She claims that the jewelry taken from the safe was valued at $63,985 and that $560 in cash was also taken.

When McReynolds returned from the trip, she contacted an employee of the companies. That employee told her that the other hotel at the resort "'included a credit card key system as opposed to the antiquated room key system'" used at the hotel where McReynolds stayed.

McReynolds filed a complaint in district court and named as defendants the companies and the local and corporate owners of the hotel. She stated four theories of recovery, including negligence and breach of contract.

McReynolds claimed that the companies were negligent in failing to warn her of the "defect in the key system of the hotel." According to McReynolds, a key system "in which the key displays the room number does not comply with the international hotel industry's standard . . . when the in-room safe also requires a key instead of a combination," because it "necessitates the two (2) keys to be separated." She claimed that the companies should have warned her of "this industry standard violation."

Regarding her breach of contract claim, McReynolds claimed that she contracted with the companies for her hotel room and that they breached their duty under the contract to provide her with a secure room free from criminal acts. She did not point to any language in any contract to support this argument.

The companies moved for summary judgment. In support of the motion, they offered affidavits of their employees and their attorney. McReynolds offered her own affidavit in opposition to the motion.

The companies' employees averred in their affidavits that McReynolds "was charged for services which were limited to the booking of a hotel room in Mexico for the purpose of a vacation." They stated that the companies "did not undertake to contract with [McReynolds] or provide [McReynolds] with any other services." They also stated that they were not aware that McReynolds planned to take valuable jewelry with her to Mexico.

McReynolds stated in her affidavit that the companies provided her services beyond merely booking a hotel room. She claimed that they provided an all-inclusive vacation package that included airfare, lodging, meals and drinks, a sailing excursion, ground transportation, and a designated representative who was present at the resort and available to respond to inquiries from guests or arrange additional excursions. She also claimed that before her vacation, she communicated with an employee of the companies. According to McReynolds, the employee said that she had personal knowledge of the hotel because she had recently traveled there herself. The employee also provided a photograph of the companies' designated representative and promised to share "'travel tips.'" McReynolds did not make any claims in her affidavit regarding the promises the companies made to her by contract.

The district court granted summary judgment for the companies on all of McReynolds' theories of recovery. Regarding McReynolds' negligence claim, the district court first concluded that assuming that the key system was defective, the companies did not have a duty to warn McReynolds about the key system. Second, it concluded that even if the companies were negligent, McReynolds was also negligent in leaving her safe key in the room, and that her negligence superseded any negligent act by the companies. Third, it concluded further that the theft was the result of an intentional act by a third party, which also superseded any negligent act by the companies. Regarding her breach of contract claim, the district court found that there was no evidence that the companies contracted with McReynolds to protect her jewelry and cash.

McReynolds filed this timely appeal, and we moved the case to our docket.[1]

## ASSIGNMENTS OF ERROR

McReynolds assigns, restated, that the district court erred in granting the companies' motion for summary judgment, because material issues of fact exist regarding (1) the nature of the services provided by the companies and their duty to disclose pertinent information and (2) whether they breached their contract with McReynolds by failing to disclose pertinent information.

## STANDARD OF REVIEW

[1] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[2]

[2,3] The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation.[3] When reviewing a question of law, an appellate court resolves the question independently of the conclusion reached by the trial court.[4]

## ANALYSIS

### DUTY TO WARN

[4-7] On appeal, McReynolds claims that genuine issues of material fact exist regarding whether the companies acted as her special agents and whether they therefore owed her a duty to disclose pertinent information. An "agent may be subject to tort liability to the principal for failing to perform his duties."[5] In order to prevail in a negligence action, a plaintiff must establish the defendant's duty to protect the plaintiff from injury, a failure to discharge that duty, and damages proximately caused by the failure to discharge that duty.[6] Thus, the threshold inquiry in any negligence action is whether the defendant owed the plaintiff a duty.[7] A "duty" is an obligation, to which the law gives recognition and effect, to conform to a particular standard of conduct toward another.[8] If there is no duty owed, there can be no negligence.[9]

This court has never considered whether a travel agent owes a duty to disclose pertinent information to its clients. Courts from other jurisdictions generally agree that a travel agent who

---

[1]  See Neb. Rev. Stat. § 24-1106(3) (Supp. 2015).

[2]  *DMK Biodiesel v. McCoy*, 290 Neb. 286, 859 N.W.2d 867 (2015).

[3]  *Olson v. Wrenshall*, 284 Neb. 445, 822 N.W.2d 336 (2012).

[4]  *Id.*

[5]  Restatement (Second) of Agency, ch. 13, topic 1, Introductory Note for §§ 376-398 at 171 (1958).

[6]  *Olson v. Wrenshall, supra* note 3.

[7]  *Id.*

[8]  *Id.*

[9]  *Id.*

arranges vacation plans acts as more than a mere "ticket agent" and is a special agent of the traveler.[10] Those courts hold that as special agents, travel agents or tour operators are subject to the duties of care and skill imposed under the law of agency.[11] Under agency principles, travel agents do not owe a general duty to warn travelers of general safety precautions,[12] but they do owe a duty "'to use reasonable efforts to give [the] principal information which is relevant to affairs entrusted to him and which, as the agent has notice, the principal would desire.'"[13]

However, courts in other jurisdictions also agree that travel agents and tour operators do not owe a duty to disclose information about obvious or apparent dangers.[14] It appears well settled in other jurisdictions that an agent's duty to warn travelers of dangerous conditions "applies to situations where a tour operator [or travel agent] is aware of a dangerous condition not readily discoverable by the plaintiff. It simply does not apply to an obvious dangerous condition equally observable by plaintiff . . . ."[15]

This view appears consistent with § 18 of the Restatement (Third) of Torts,[16] which governs an actor's "Negligent Failure to Warn." Comment *f.* to that section provides:

> A defendant can be negligent for failing to warn only if the defendant knows or can foresee that potential victims will be unaware of the hazard. Accordingly, there generally is no obligation to warn of a hazard that should be appreciated by persons whose intelligence and experience are within the normal range.[17]

---

[10] *Afflerbach v. Cunard Line, Ltd.*, 14 F. Supp. 2d 1260 (D. Wyo. 1998); *Stafford v. Intrav, Inc.*, 841 F. Supp. 284 (E.D. Mo. 1993); *Maurer v. Cerkvenik-Anderson Travel, Inc.*, 181 Ariz. 294, 890 P.2d 69 (Ariz. App. 1994); *United Airlines, Inc. v. Lerner*, 87 Ill. App. 3d 801, 410 N.E.2d 225, 43 Ill. Dec. 225 (1980); *Grigsby v. O.K. Travel*, 118 Ohio App. 3d 671, 693 N.E.2d 1142 (1997); *Douglas v. Steele*, 816 P.2d 586 (Okla. App. 1991).

[11] See *Douglas v. Steele, supra* note 10 (citing Restatement, *supra* note 5, § 379(1)). See, also, 2 Restatement (Third) of Agency § 8.08 (2006).

[12] See, e.g., *Sova v. Apple Vacations*, 984 F. Supp. 1136 (S.D. Ohio 1997); *Davies v. General Tours, Inc.*, 63 Conn. App. 17, 774 A.2d 1063 (2001).

[13] *Maurer v. Cerkvenik-Anderson Travel, Inc., supra* note 10, 181 Ariz. at 296, 890 P.2d at 71 (quoting Restatement, *supra* note 5, § 381). See, also, *United Airlines, Inc. v. Lerner, supra* note 10; *Markland v. Travel Travel Southfield*, 810 S.W.2d 81 (Mo. App. 1991); 2 Restatement, *supra* note 11, § 8.11. But see, *Lavine v. General Mills*, Inc., 519 F. Supp. 332, 335 (N.D. Ga. 1981) (stating that "the court can discern no duty that [tour package planner and seller] owed to plaintiff to warn her of or protect her from the hazard that caused her injury"); *Lachina v. Pacific Best Tour, Inc.*, No. 93 Civ. 6193 (HB), 1996 WL 51193, at *1 (S.D.N.Y. Feb. 7, 1996) (unpublished opinion) (holding that "[u]nder New York law, tour companies and travel agents . . . owe no duty to tour members to inform them of possible hazardous conditions on the property of others").

[14] *Hofer v. Gap, Inc.*, 516 F. Supp. 2d 161 (D. Mass. 2007); *Sachs v. TWA Getaway Vacations, Inc.*, 125 F. Supp. 2d 1368 (S.D. Fla. 2000); *Sova v. Apple Vacations, supra* note 12; *Passero v. DHC Hotels and Resorts, Inc.*, 981 F. Supp. 742 (D. Conn. 1996); *Stafford v. Intrav, Inc., supra* note 10; *Davies v. General Tours, Inc., supra* note 12; *Markland v. Travel Travel Southfield, supra* note 13.

[15] *Passero v. DHC Hotels and Resorts, Inc., supra* note 14, 981 F. Supp. at 744.

[16] 1 Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 18 (2010).

[17] *Id.*, comment *f.* at 208.

In the instant case, we do not need to decide whether the companies were McReynolds' special agents who therefore owed her a duty to disclose pertinent information. Assuming that they were McReynolds' special agents and that they owed her a duty to disclose pertinent information, we conclude that the companies did not owe a duty to warn her about the hotel's key system, because any dangers it may have posed were obvious.

We find two cases from other jurisdictions particularly instructive. Both cases addressed situations involving obvious dangers.

In *Hofer v. Gap, Inc.*,[18] the plaintiff was injured when she fell into a pond at a hotel. She sued the operator of the Web site that she used to book her hotel room, claiming that the Web site operator, as her agent, had a duty to warn her of dangerous hazards of which it was aware through its "'inside information.'"[19] The court concluded that the Web site operator had no duty to warn the plaintiff, because there was "no evidence to suggest that [the Web site operator] had 'inside information' about the conditions of the turtle pond and stairs that [the plaintiff] did not herself have. The alleged hazards were just as open and obvious to [the] plaintiff as they were to [the Web site operator]."[20]

The court in *McCollum v. Friendly Hills Travel Center*[21] reached a similar conclusion. There, the plaintiff used a travel agency to book a trip to a resort in order to water-ski. He asked the travel agent whether he would need to bring his own skiing equipment with him, and she told him that he did not. When he arrived, he discovered that the resort had only one pair of water skis, which was in disrepair. He also found that the resort did not provide water-skiers with an observer. The plaintiff inspected the skis, concluded that they were worn but safe, and used them to water-ski three times. The third time, the boat driver took the plaintiff into rough water, and he was injured. The plaintiff sued the travel agency, claiming that the agency should have warned him about the dangerous skiing conditions at the resort.

The California court, discussing the issue in terms of the breach of a duty rather than the existence of a duty, concluded that the travel agency did not breach its duty to warn. It reasoned that there was no breach, because

> if the equipment or skiing conditions, including, but not limited to the absence of an observer in the boat, are obviously unsafe it is incumbent upon the traveler to refrain from using those facilities. He cannot simply ski with impunity, mistakenly secure in the knowledge that the travel agent who arranged his vacation consulted a book, learned that the hotel had ski equipment and therefore assume that the equipment and conditions must be safe despite his observation of their obvious defective appearance.[22]

In the instant case, McReynolds claims that the hotel's key system was defective because her room key was engraved with her room number. She argues that the engraved number created

---

[18] *Hofer v. Gap, Inc., supra* note 14.

[19] *Id.* at 176.

[20] *Id.* at 179.

[21] *McCollum v. Friendly Hills Travel Center*, 172 Cal. App. 3d 83, 217 Cal. Rptr. 919 (1985).

[22] *Id.* at 95, 217 Cal. Rptr. at 926.

a risk of theft, because if she kept the room key in the same bag as her safe key and the bag was stolen, "the thief would have access to both the room and the room safe." Therefore, the system "necessitate[d] the two (2) keys to be separated." She claims the companies negligently failed to warn her of this defect in the key system, but she also admits that she recognized the defect and that she continued to use the safe anyway.

[8] We adopt the majority rule that travel agents do not owe a duty to disclose information about obvious or apparent dangers and conclude that the companies had no duty to warn McReynolds of the obvious risk created by the key system. Because this particular risk of the defective key system was obvious, it was incumbent upon McReynolds to avoid the obvious danger it created. She apparently attempted to do so by hiding her safe key in her room. She does not claim that the companies should have warned her that hiding the safe key in her room created a risk of theft. And even if she had made such an allegation, the risk of theft created by hiding the key to a safe in the same room as the safe itself is obvious. Because no duty was owed, there was no negligence, and the lower court properly granted summary judgment as to this claim.

McReynolds' arguments that the companies owed her a duty to disclose are unconvincing. She relies almost exclusively upon an unpublished opinion from Missouri, *Lewis ex rel. Houseworth v. Eisin*,[23] which we do not find persuasive. In *Eisin*, the mother of a boy who drowned in a hotel pool while on a school trip sued the man who organized and served as the tour guide for the trip, claiming that the tour guide had a duty to disclose information regarding the dangers of the pool. The tour guide had not disclosed that several days before the trip at issue, another boy on one of his guided trips had nearly drowned in the same hotel pool. The Missouri court concluded that the tour guide had a duty to disclose his "inside information" about the pool.[24]

We find the dissenting opinion in *Eisin* more persuasive than the majority opinion upon which McReynolds relies. The dissenting opinion noted that the law in Missouri is that a travel agent does not have a duty to disclose information if "'that information is so clearly obvious and apparent to the traveler that, as a matter of law, the travel agent would not be negligent in failing to disclose it.'"[25] It concluded that the tour guide had no duty to disclose, because the dangers of the pool were obvious and apparent to the tour group, and it noted that the majority's analysis "implicitly overrule[d] the 'obvious and apparent' exception to the general rule."[26] If we adopted McReynolds' suggested analysis, we would be rejecting the majority rule. We decline to do so.

Our conclusion is consistent with our revised jurisprudence on duty.[27] In *A.W. v. Lancaster Cty. Sch. Dist. 0001*,[28] we adopted the approach of § 7 of the Restatement (Third) of

---

[23] *Lewis ex rel. Houseworth v. Eisin*, No. ED 79341, 2002 WL 337775 (Mo. App. Mar. 5, 2002) (unpublished opinion).

[24] *Id.* at *5.

[25] *Id.* at *6 (Ahrens, J., dissenting) (emphasis omitted) (quoting *Markland v. Travel Travel Southfield, supra* note 13).

[26] *Id.*

[27] See *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010).

[28] *Id.*

Torts[29] and held that an actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm.

But we also noted that § 7(b) of the Restatement provides that "in exceptional cases, when an articulated countervailing principle or policy warrants denying or limiting liability in a particular class of cases, a court may decide that a defendant has no duty or that the ordinary duty of reasonable care requires modification."[30] We explained that "[a] no-duty determination . . . is grounded in public policy and based upon legislative facts, not adjudicative facts arising out of the particular circumstances of the case."[31] This power to make a no-duty determination also applies to duties imposed under other Restatement sections.[32]

Thus, we make the no-duty determination in the instant case as a matter of policy, based upon a traveler's ability to perceive obvious dangers. Imposing a duty to warn of obvious dangers would be a waste of time and could actually inhibit safety, because it "would produce such a profusion of warnings as to devalue those warnings serving a more important function."[33]

This no-duty determination applies only to the class of cases involving obvious dangers. We do not address any other duties owed by travel agents to their clients.

### BREACH OF CONTRACT

McReynolds fails to clearly articulate the basis for her breach of contract claim--citing one theory in her assignment but a different one in her argument. Her assignment of error states that the district court erred in granting summary judgment, because material issues of fact exist with respect to "the resulting breach of contract by [the companies] in failing to disclose pertinent and critical information to [McReynolds] prior to the herein vacation." But the argument in her brief does not mention any contractual duty to disclose information. It instead argues that the companies had a contractual duty to provide a safe hotel room. Under either theory, this claim fails.

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law.[34] After the movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence was uncontroverted at trial, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion.[35]

---

[29] 1 Restatement, *supra* note 16, § 7.

[30] *A.W. v. Lancaster Cty. Sch. Dist. 0001, supra* note 27, 280 Neb. at 213, 784 N.W.2d at 915.

[31] *Id.*

[32] 2 Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 42, comment *b.* (2012).

[33] 1 Restatement, *supra* note 16, § 18, comment *f.* at 208.

[34] *Latzel v. Bartek*, 288 Neb. 1, 846 N.W.2d 153 (2014).

[35] *Id.*

To support their motion for summary judgment, the companies presented affidavits in which they averred that they "did not undertake to contract with [McReynolds] or provide [her] with any other services" other than booking her hotel room. This evidence was sufficient to shift the burden of production to McReynolds. McReynolds did not present any evidence to the contrary. As we noted above, McReynolds' responsive affidavit did not address the terms of any contract with the companies. Therefore, she did not meet her burden to produce evidence showing the existence of material issues of fact, and the district court did not err in granting summary judgment as to this claim.

## CONCLUSION

McReynolds' negligence claim fails because, even if the companies were her special agents and owed a duty to disclose pertinent information, they did not owe a duty to warn her about the obvious risk of hiding the key to the safe in the room in view of the nature of the hotel's key system. And McReynolds did not show that a genuine issue of material fact exists regarding her breach of contract claim. Accordingly, we affirm the district court's order granting summary judgment for the companies.

AFFIRMED.